08/27/2007 10:37 FAX  4153312738          LAW OFFICES OE BONNER                    ☑004/024

**ORIGINAL**
**FILED**

AUG 2 7 2007

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

1  CHARLES A. BONNER, ESQ. SB# 85413
   A. CABRAL BONNER, ESQ. SB# 247528
2  **LAW OFFICES OF BONNER & BONNER**
   1913 BRIDGEWAY
3  SAUSALITO, CA 94965
   TEL: (415) 331-3070
4  FAX: (415) 331-2738

5  ATTORNEYS FOR PLAINTIFF
   JAMES FURGESON
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 JAMES FURGESON,                    Case No:  C 07-02683 JL

12            Plaintiff,              **AMENDED COMPLAINT FOR**
                                      **DAMAGES**:
13      v.                            1. Violation of United States Civil Rights
                                          Laws:
14 OAKLAND UNIFIED SCHOOL            2. Retaliation (Title VII FEHA);
   DISTRICT, KIMBERLY STATHAM,       3. Employment Discrimination (Title VII);
15 RAMON HONEA, JACQUELINE           4. 42 U.S.C. § 1983; 1985; 1981;
   PHILLIPS and DOES 1 - 50,         5. Breach of Contract;
16                                   6. Breach of the Covenant of Good Faith and
            Defendants.                  Fair Dealing;
17                                   7. Slander;
                                     8. Libel;
18                                   9. Invasion of Privacy;
                                     10.Intentional Infliction of Emotional
19 _____/             Distress;
                                     11.Negligence
20

21

22                                   **JURY TRIAL DEMANDED**

23 PLAINTIFF JAMES FERGUSON alleges as follows:

24                          **INTRODUCTION**

25      1.    JAMES FERGUSON brings this action to vindicate his constitutional, statutory and

26 common law rights.

27      2.    PLAINTIFF JAMES FERGUSON (hereinafter "Ferguson " or "Mr. Ferguson")

28 alleges that during his tenure as an employee with OAKLAND UNIFIED SCHOOL DISTRICT

AMENDED COMPLAINT FOR DAMAGES                                              1

(hereinafter "DISTRICT" or "OUSD"), DISTRICT discriminated against him on the basis of his race and gender and engaged in a pattern and practice of disparate treatment, including denying him the privileges, terms and conditions of employment afforded to other employees. Additionally, DISTRICT repeatedly retaliated against FERGUSON for his constitutionally protected activity.

<u>JURISDICTION</u> <u>AND</u> <u>VENUE</u>

3.    This action is brought pursuant to Title VII, 42 2000-e, et seq., 42 U.S.C. Sections 1983, 1985 and the First, Fourth, *Fifth* (due process?) and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction over this case under 28 U.S.C. §1331 because PLAINTIFF's claims arise under the federal civil rights statutes of the United States. PLAINTIFF further invoke the pendant jurisdiction of this Court to hear and decide claims arising out of       law because state and federal claims are derived from the common nucleus of operative facts.

4.    DEFENDANTS are each and all subject to suit in that DEFENDANT, DISTRICT is as school district who regularly employs 15 or more persons.

5.    DEFENDANTS' conducts its business and is a government agency operating under color of state authority in this judicial district.

PARTIES

6.    PLAINTIFF JAMES FERGUSON is and was at all times relevant herein a citizen of the United States and resident of Oakland, California. At all times herein mentioned PLAINTIFF JAMES FERGUSON was a teacher, employed by DEFENDANT DISTRICT.

7.    DEFENDANT OAKLAND UNIFIED SCHOOL DISTRICT is a municipal corporation, organized under the laws of the state of California, doing business in California as a government subdivision under color of State authority and subject to the laws of this State and the United States.

8.    DEFENDANT KIMBERLY STATHAM is the current State Administrator for the Oakland Unified School District. At all times here in relevant, she was appointed to oversee the School District and was responsible for the supervision and management of school site and district level administrators.

9.    At all times mentioned herein STATHAM was acting under color of State law, to wit:

AMENDED COMPLAINT FOR DAMAGES                                                2

under the colors of the statutes, ordinances, regulations, policies, customs, and usages of the State of California, and was acting within the course and scope of her employment.

10.    DEFENDANT RAMON HONEA was, at all times herein relevant the Assistant Principal of Havenscourt Middle School. As an assistant principal, DEFENDANT HONEA was an Agent and Manager of DEFENDANT DISTRICT.

11.    DEFENDANT JACQUELINE PHILLIPS was, at all times herein relevant the Principal of Havenscourt Middle School. As principal, DEFENDANT PHILLIPS was an Agent and Manager of DEFENDANT DISTRICT. (All DEFENDANTSs hereinafter collectively referred to as "DEFENDANTS")

<u>RESPONDEAT</u> <u>SUPERIOR</u>

12.    All of the described conduct, acts, and failures to act are attributed to agents and employees under the direction and control, and with the permission, consent and authorization of DEFENDANTS. Said acts, conduct and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment.

<u>EXHAUSTION</u> <u>OF</u> <u>ADMINISTRATIVE</u> <u>REMEDIES</u>

13.    Before invoking the jurisdiction of this Court, Ferguson sought relief from all appropriate administrative agencies. FERGUSON timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and received his Right-to-Sue letter from the EEOC on February 21, 2007. FERGUSON received his Notice of the Right-to-Sue letter on or about February 25, 2007.   On or about May 21, 2007, Mr. Ferguson presented a claim to the School District for the ongoing violations. OUSD rejected Mr. Ferguson's claim on June 15, 2007.

<u>WORKERS</u> <u>COMPENSATION</u> <u>EXCLUSIVITY</u> <u>DOES</u> <u>NOT</u> <u>APPLY</u>

14.    Each and every wrongful, injurious, negligent, willful, discriminatory, harassing acts, and failure to act, by DEFENDANTS were not a normal incident of employment and were outside the scope of the employment bargain. Thus, the Worker's Compensation exclusive remedy set forth in California Labor Code §3600 et seq. will not preempt nor bar PLAINTIFF's right to recover for damages set forth herein.

AMENDED COMPLAINT FOR DAMAGES                                                3

## STATEMENT OF FACTS

15.      Mr. Ferguson was and is a teacher employed by the DEFENDANT, OAKLAND UNIFIED SCHOOL DISTRICT.  Mr. Ferguson holds a Professional Clear Single Subject Teaching Credential in the field of Social Studies.  He has a supplementary Authorization in Introductory Physical Education, and Sports and Games.

16.      During the 1997-1998, 1998-1999 and 1999-2000 School years, Mr. Ferguson taught at King Estates Middle School.  At the time, King Estates Middle School was a public middle school in the OUSD.  Joslin Johnson was the principal of King Estates during the 1998, 1999, and 2000 school years.  Johnson became principal in 1998.

17.      In the Spring of the 1998, Mr. Ferguson on behalf of the School's Faculty requested that Principal Johnson provide the Faculty Council with a report on the School Budget.  Principal Johnson did not provide the requested information.

18.      Throughout the 1999-2000 school year Mr. Ferguson as well as members of the Faculty Council (FC) and the School Site Council (SSC) urged Johnson to be forthcoming with information about the school budget because of concems of mismanagement of school funds.

19.      In the fall of the 1999-2000 school year, PLAINTIFF Mr. Ferguson, renewed his request to review the school's budget.  Principal Johnson responded by having a copy of the budget placed in each teachers' box.  After reviewing the budget, Mr. Ferguson and members of the FC and the SSC raised questions about the appropriate expenditure of $113,272 for 2 FTE's funded under EIA-SCE.

20.      Also in the fall of the 1999-2000 school year, King Estates was selected to become part of the Immediate Initiative Underachieving Schools Program (II/USP).  This program offered funding to low performing schools to develop and implement school-wide Actions Plans aimed at improving student outcomes.  During the 1999-2000 school year, Mr. Ferguson was then the Oakland Educational Association (OEA) representative for King Estates.  Concerned about the bargaining impact of the II/USP legislation, in November of 1999, OEA appointed Mr. Ferguson to oversee the process as the exclusive bargaining agent's representative to the 13 broad-based school site and community teams within OUSD.

AMENDED COMPLAINT FOR DAMAGES                                                    4

21.      Throughout the fall and into the winter of the 1999-2000 school year, Mr. Ferguson' and members of the FC and the SSC made numerous requests of Principal Johnson to explain the budget anomalies.  Despite the groups many inquires Principal Johnson was not forthcoming with information about the questionable budget items.  Mr. Ferguson, on behalf of the Faculty Council and members of the School Site Council escalated their efforts by writing letter to key district and state personnel, urging them to conduct an audit of school site expenditures.  Mr. Ferguson wrote letters to interim Superintendent Musgrove in 1999 and also to incoming Superintendent Chaconas in 2000.  In January of 2000, Mae Wheaton, the School Site Council Chairperson wrote a letter to Tom Lugo, at the California State Department of Education.  All of these letters voiced concern about King Estate's state and federal categorical expenditures and  Principal Johnson's lack of forthrightness.

22.      In May of 2000, Mr. Ferguson wrote another letter to Superintendent Dennis Chaconas requesting his intervention in resolving the issues concerning budget and non-disclosure at King Estate by Ms. Johnson.

,'23.      On June 9, 2000 Principal Johnson informed Mr. Ferguson that for the 2000-2001 school year his position as Technology Lab teacher was being eliminated.  Additionally, Principal Johnson informed Mr. Ferguson that his Supplementary Authorization (Sports and Games/Intro. Physical Educ.) did not qualify Mr. Ferguson to teach Physical Education because the Physical Education Teachers were going to be now also required to teach one period of Science or one period of Math.  Mr. Ferguson is informed, believes and hereon alleges that combining Physical Education with Math and Science was an unprecedented deviation from the standard practices at King Estates. Furthermore, Mr. Ferguson is informed, believes and hereon alleges that in the final master calendar for the 2000-2001 school year the Physical Education teachers taught no period of math or science. Principal Johnson manipulated the Physical Education teaching positions to deny Mr. Ferguson a position at King Estates.  Principal Johnson took this action in retaliation of Mr. Ferguson's constitutionally protected acts of speaking out on behalf of the teacher, parents, and students at King Estates, and demanding accountability.  The District facilitated this retaliation by failing to take any action to assist Mr. Ferguson in retaining his position at King Estates.

AMENDED COMPLAINT FOR DAMAGES                                                          5

24.    On or around June 16, 2000, Mr. Feguson filed two level 1 Grievances against Principal Johnson" 99-088 and 99-089.  Grievance 99-088 challenged Principal Johnson's decision to involuntarily transfer Mr. Ferguson away from King Estates.  Grievance 99-089 challenged Principal Johnson's decision to pay the teachers who worked on the        Action Plan $13.51 per hour instead of the $21.61 that they were entitled to.

25.    Additionally, on June 16, 2000 Mr. Ferguson filed with the District Ombudsperson, Delia Ruiz, a Level I Uniform Complaint concerning the failure of Ms. Johnson to provide detailed budget expenditure and budget transfer information.

26.    After filing the Uniform Complaint Mr. Ferguson lost his assignment at King Estates.  In the Summer of 2000, Mr. Ferguson tried repeatedly to meet with the new King Estates teacher Emily Gladis to discuss returning to King Estates.  Ms. Gaddis refused to meet with Mr. Ferguson.  Mr. Ferguson then went to Superintendent Chaconas for support in retaining his position at King Estates.  Mr. Chaconas did not respond to Mr Ferguson's communications on this issue.

27.    In August of 2000, District Human Resources assigned Mr. Ferguson to Castlemont High School to teach Social Studies.  Mr. Ferguson accepted the position at Castlemont, however he was not offered the opportunity to chose from available vacancies in the district.

28.    During the 2000-2001, 2001-2002, and 2002-2003 school years Mr. Ferguson continued to pursue the Uniform Complaint he filed in June of 2000.  In November of 2000, Mr. Ferguson filed a Level II Appeal of the Complaint against Principal Johnson.  In December of 2000, Mr Ferguson wrote letters to Howie Delane and Gary Page at the State Department of Education.  In these letters Mr. Ferguson requested assistance in resolving the Uniform Complaint against QUSD.  In February of 2001, Mr. Ferguson met with School Board Member Noel Gallo regarding the Uniform Complaint and his involuntary transfer and consolidation.  In April of 2001, Mr. Ferguson sent letters to all California State Board of Education members regarding QUSD's non-compliance in the        plan implementation at King Estates Middle school.  Also in April, Mr. Ferguson sent a letter to Barbara Brandes, at the State Department of Education regarding non-compliance at King Estates Middle School.  Also in April of 2001, Mr. Ferguson sent a letter requesting Federal intervention in the misapplication of Compensatory Funding for the        plan

AMENDED COMPLAINT FOR DAMAGES                                                    6

to the United States Department of Education Office of Civil Rights. In June of 2001, Mr. Ferguson had a discussion with then Oakland Mayor Jerry Brown regarding the issue in OUSD. In June and July of 2001 Mr. Ferguson had several more correspondences with the Office of Civil Rights regarding his Uniform Complaint.

29.    In August of 2001, Mr. Ferguson had a meeting with Superintendent Chaconas, and OEA executive director Bruce Colwell. In this meeting, the group discussed creating a new position for Mr. Ferguson, implementing a comprehensive computer-based literacy program. The creation of the position would resolve the grievance filed by Mr. Ferguson. Superintendent Chaconas took no action to implement the settlement agreement.

30.    A year later, in July of 2002, Gary Page, Educational Programs Assistant, at the California Department of Education offered to facilitate a mediation between Mr. Ferguson and the District over the issues raised in the Uniform Complaint.

31.    August 26, 2002 was the first day of the fall semester for the 2002-2003 school year. Mr. Ferguson's class schedule included five sections of 9th grade Physical Education. This was consistent with his credential. On August 27, 2002, Assistant Principal Rick Gaston, approached Mr. Ferguson and asked him about teaching two study skills classes. Mr. Ferguson stated that he would need to think it over and later provide Gaston with an answer.

32.    On August 28, 2002 Mr. Ferguson met with Gary Page and Stephanie Papas of the California Department of Education, regarding the Uniform Complaint investigation. OUSD turned down Mr. Ferguson and Mr. Page's offer of mediation to resolve the Uniform Complaint. Mr. Page

33.    On August 29, 2002, the following day, Assistant Principal Rick Gaston, changed Mr. Ferguson's class schedule without Mr. Ferguson's agreement. Mr. Ferguson was given a mixed class of ninth, tenth, eleventh, and twelfth grade students. Teaching these students compromised Mr. Ferguson's supplemental credential. Mr. Ferguson protested the change in his teaching assignment. In September of 2002, Mr. Ferguson's teaching assignment was changed once again. This time the Administration took away the two study skills classes, leaving Mr. Ferguson with only 3 morning Physical Education classes. Furthermore, Castlemont principal Debra Lindo, then threatened that if Mr. Ferguson did not accept a U.S. History teaching assignment, she would implement a 3/5

AMENDED COMPLAINT FOR DAMAGES                                                    7

1   consolidation action.

2       34.     Despite Mr. Ferguson's protests, the site administration made yet another change to

3   Mr. Ferguson's schedule. In October of 2002, the site administration made Mr. Ferguson roam

4   between three different classrooms teaching History and Physical Education. When Mr. Ferguson

5   informed Principal Lindo that her acts were in direct conflict with the Collective Bargaining

6   Agreement, Principal Lindo replied that according to the Human Resources Department, all Mr.

7   Ferguson was entitled to was a job.

8       35.     Site administration with full support and sanction of the District assigned Mr.

9   Ferguson to teach U.S. History in one teachers portable, then teach two periods of Physical

10  Education in the Gym, then teach another period of U.S. History in a different teachers portable. The

11  administration did not give Mr. Ferguson keys to the portables. Therefore, if the regular teachers are

12  not in the portable, Mr. Ferguson and his class have to wait for a custodian to open the room.

13      36.     Changing Mr. Ferguson's teaching assignment three times during the first three

14  months of school and subjecting him to such unprofessional teaching conditions were acts of

15  retaliation by the District for Mr. Ferguson's continued attempts to have the state and federal

16  government officials investigate the facts underlying his Uniform Complaint.

17      37.     In October of 2002, Mr. Ferguson filed a Level I Grievance (2002-18) with Principal

18  Lindo. Additionally, in November of 2002, Mr. Ferguson filed an Unfair Practice Charge against

19  OUSD -(SF-CE-2299-E) and charged OEA (SF-CO-620-E) for violating their duty of Fair

20  Representation.

21      38.     The Site Administrators and the District took virtually no action to resolve Mr.

22  Ferguson's Grievance. Principal Lindo's did not respond to Mr. Ferguson's level I Grievance in a

23  timely manner. Sue Woerhle, Executive Director High Schools, did not respond at all to Mr.

24  Ferguson's level II Grievance. Mr. Ferguson then appealed the Grievance to level II, sending it to

25  Superintendent Dennis Chaconas. Once again District did not respond. In December of 2002,

26  Principal Lindo delivered a Notice of Anticipated Consolidation of Position to Mr. Ferguson.

27      39.     The stress of the ordeal was having a deleterious effect on Mr. Ferguson's health. He

28  was experience episodes of chest pain as well as back and neck spasms. At the instruction of his

1   physician, Mr. Ferguson went out on medical leave in January of 2003.

2          40.    Mr. Ferguson remained on medical leave for the remainder of the semester.  In that

3   time the District took little action to resolve Mr. Ferguson's grievance.  Instead, Principal Lindo took

4   further retaliated against Mr. Ferguson.  On February 4, 2003, Principal Lindo sent Mr Ferguson a

5   letter requesting intrusive, private and confidential information about Mr. Ferguson's illness.

6   Principal had no right to any of the information she requested.  The request was made to harass Mr.

7   Ferguson and further retaliate against him.  On February 10, 2003, Principal Lindo sent Mr. Ferguson

8   a letter retracting the February 4 letter.

9          41.    In May of 2003, Mr. Ferguson met with Assistant Superintendent Louis Cohen.  At

10  this meeting Mr. Cohen acknowledged that Lindo and Gaston's actions violated the Collective

11  Bargaining Agreement.  Mr. Cohen agreed to work on finding Mr. Ferguson a permanent Physical

12  Education position at a Middle School.  Mr. Cohen did not offer Mr. Ferguson a specific position

13  nor did he inform Mr. Ferguson of a specific school where Mr. Ferguson might be placed.  During

14  this meeting, Mr. Ferguson did not agree to accept any specific placement, because Cohen did not

15  offer him a specific placement.

16         42.    In June of 2003, Mr. Ferguson received a letter from District Human Resources,

17  informing him that for the 2003-2004 school year he was assigned to Cole School to teach Physical

18  Education.  This transfer to Cole was involuntary. The District never asked Mr. Ferguson if he

19  wanted to make a change, nor did they give him any information about what positions were open to

20  him.  Additionally, Mr. Ferguson is informed believes and hereon alleges that Castlemont had an

21  opening for a Physical Education teacher for the 2003-2004 school year.  The position was for five

22  periods of Physical education, similar to the schedule Mr. Ferguson had at the beginning of the

23  2002-2003 school year.  District could have assigned Mr. Ferguson to teach five periods of ninth

24  grade at Castlemont.  Instead, they violated his rights under the Collective Bargaining Agreement

25  and assigned him to Cole in further retaliation for his constitutional protected conduct.

26         43.    Once again the stress of the situation was too much for Mr. Ferguson to handle.  In

27  October of 2003, Mr. Ferguson went out on medical stress leave.  Mr. Ferguson returned to Cole in

28  May of 2004.

AMENDED COMPLAINT FOR DAMAGES                                                            9

44.    Mr. Ferguson returned to Cole for the 2004-2005 school year.  He taught Physical Education, uninterrupted for the entire year.

45.    The District, however,    done punishing Mr. Ferguson for his constitutionally protected conduct.  In August of 2005, Mr. Ferguson reported to Cole for the start of the 2005-2006 school year.  When he arrived on campus a site administrator infonned him that he had been transferred.  When he contacted the District, they told him he did not have an assignment and that he could be a roving teacher.

46.    Before the start of the 2005-2006 school year, the District infonned Mr. Ferguson that he could take a Physical Education position at Havenscourt Middle School

47.    On March 9, 2006, during first period, Mr. Ferguson was involved in an incident with a student. The student was being disruptive and defiant.  He was running around the gym and was not responding to Mr. Ferguson's requests for him to return to the class.  Believing that the student was a threat to himself and the many other individuals in the gym, Mr. Ferguson attempted to restrain the student.  The student tried to evade Mr. Ferguson and ended up banging into the wall 2 or three timeS.

48.    Mr. Ferguson was finally able to restrain the student.  The student calmed down and walked across the gym to the rest of his class.  The student did not act up for the rest of the period.

49.    Assistant Principal Ramon Honea visited Mr. Ferguson during his second period class to ask Mr. Ferguson about the incident.  Mr. Honea informed Mr. Ferguson that the Student alleged that Mr. Ferguson called him a derogatory name and pushed him into a wall.  Later that day, Mr Ferguson was called into the Principal's office.  During this meeting the student repeated his false allegation, claiming that Mr. Ferguson called him a "faggot".  Mr. Ferguson protested and asked Ms. Phillips to query the students in his class about what happened.

50.    At the time of the incident there were a total of three classes in the Gym.  Mr. Ferguson was leading his own class and covering for Mr. Gulley.  Additionally, Ms. Sultan was leading a class on the other side of the gym. The administration, led by Assistant Principal Honea collected statements from the student involved in the incident and from four friends of the student who was involved in the incident.  The administration did not talk to a single member of Mr.

AMENDED COMPLAINT FOR DAMAGES                                                10

1  Ferguson's class, nor did they talk with other students from Mr. Gulley's class, nor did they talk with

2  any students from Ms. Sultan's class. The administration did not even talk with Ms. Sultan, the other

3  adult in the gym at the time of the incident.

4      51.    Ms. Phillips asked Ms. Sultan to write a statement about the incident. Ms. Sultan's

5  statement was consistent with Mr. Ferguson's account of the events and inconsistent with the

6  accounts from the students' statements. Additionally, the students' statements are not consistent. In

-7  his statement, the student involved in the incident says Mr. Ferguson called him a faggot after the

8  student slid a clipboard to Mr. Ferguson. A different student statement claims that Mr. Ferguson

9  called the boy a "jackass". Additionally, two of the statements don't mention Mr. Ferguson saying

10  anything to the student involved in the incident.

11      52.    Furthermore, the student involved in the incident had a history of being disruptive in

12  class and being disrespectful to teachers and other students. The student had been disciplined for

13  calling one teacher a "faggot" and calling another teacher a "bitch".

14      53.    On Friday March 10, 2006 Mr. Ferguson met with the boy's mother. The mother

15  indicated that she was very worried about Miguel. The mother also            that she did not wish

16  to see the incident go any further.

17      54.    Despite the total lack of an adequate investigation into the true events of March 9,

18  2006, and with more than enough contradictory evidence to suggest to the site administration and

19  the District that the students story may have been false, on March 13, 2006, a representative from

20  District Human resources met Mr. Ferguson and presented him with a letter indicating that he had

21  been placed on administrative leave.

22      55.    Mr. Ferguson is informed, believes, and hereon alleges that Assistant Principal Honea

23  was involved in an incident where he pushed and attempted to restrain an African America student.

24  The acts involved were very similar to the allegations made against Mr. Ferguson. Mr. Honea is

25  Latino, as was the student involved in the March 9, 2006 incident. Mr. Honea received no discipline

26  for the incident with the African American student. However, Mr. Honea was instrumental in

27  pushing the district to place Mr. Ferguson on administrative leave.

28      56.    The incident with Mr. Ferguson was not the first time an African American male

AMENDED COMPLAINT FOR DAMAGES                                                    11

teacher had been treated differently because of his race and gender.  Another African American'
Physical Education Teacher, Joe Roberts, was also involved in an incident with several Latino
students.  Several male Latino students were throwing rocks at Mr. Roberts.  The rocks hit Mr.
Roberts in the head and caused him injury.  In an effort to defend himself, Mr. Roberts tossed his
keys in the direction of the perpetrators.  The attackers falsely reported to Mr. Honea that they only
threw erasers.  Mr. Honea pushed to have Mr. Roberts placed on administrative leave.  During a
hearing with Mr. Roberts' union representative, Mr. Honea made a biased comment regarding a, "big
black man hitting Latino kids."

57.     In a meeting on May 17, 2'006 District officials told Mr. Ferguson that they would
complete their investigation into the March 9 incident by May 19, 2006.  The district took no action
to further investigate the incident. Mr. Ferguson remained on Administrative Leave for the remainder
of the 2005-2006 school year.  Mr. Ferguson did not receive any correspondence from the District
until September 21, 2006 when he received a letter informing him that the District had been trying
to get in touch with him by phone and was unable to do so.  The letter also infonned Mr. Ferguson
that Dasha' LaBrie wanted to have a meeting with Mr. Ferguson to discuss the "allegations of
misconduct."  The letter went on to infonn Mr. Ferguson that given the nature of the charges, the
district had grounds to suspend Mr. Ferguson without pay.

58.     The District made no          contact with Mr. Ferguson until a letter dated October
26, 2006, infonning Mr. Ferguson that the District was suspending him without pay effective
November 1, 2006.  The District came to this conclusion without taking any further action to
investigate the allegations against Mr. Ferguson.  The District was once again retaliating against Mr.
Ferguson for the constitutionally protected activity he engaged in between during the 1999-2003
school years.

59.     On November 1, 2006, District suspended Mr. Ferguson without pay.  On November
6, 2006 Mr. Ferguson received a Notice of Intent to Dismiss and a Statement of Charges.  In the
documents, the State Administrator, Kimberly Statham accuses Mr. Ferguson of engaging in hate
speech despite the contradicting accounts by the students.  The Statement of Charges states that
approximately fifty-five students and one teacher witnessed the events, yet Ms. Statham relies solely

AMENDED COMPLAINT FOR DAMAGES                                                    12

on the contradicting statements taken the day of the incident. The Statement of Charges had no evidence of any additional investigation beyond accepting the statements of the student involved and his friends.

60.' Mr. Ferguson successfully challenged the suspension through a writ of mandate and was returned to his status of paid Administrative leave.

61.    By engaging in this Constitutionally protected activity, Mr. Ferguson angered many individuals at the District. Mr. Ferguson attempted to bring State and National attention to the misappropriation of state and federal funds at an Oakland Public School. Over the next several years District officials engaged in a series of retaliatory acts designed to drive Mr. Ferguson from the District. Mr. Ferguson was hired as a teacher in the District in 1992. In the seven years 1992 and 1999, Mr. Ferguson filed no grievances or complaints. He had no negative evaluations and no discipline from the district. In the six years following his attempts to uncover the truth behind the King Estate Budget anomalies, he was involuntarily transferred three times, had his teaching assignment change without his consent three times in the first three months of a school year, he was made to rove between three classrooms, he was assigned to a school with no facilities for Physical Education, he has filed five grievances only one of which was satisfactorily resolved by the district, and he was suspended without pay and is facing dismissal based on an incident that was never investigated by the District.

FIRST CAUSE OF ACTION
(Discrimination under Title VII and FEHA)
AGAINST ALL DEFENDANTS

62.    Paragraphs 1 through 61 of this Complaint are hereby incorporated in and made a part of this First Cause of Action.

63.    PLAINTIFF is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely African-American. 42 U.S.C. §2000e(f).

64.    DEFENDANTS are an employer within the meaning of Title VII. 42 U.S.C. §2000e(b), and within the meaning of the Fair Employment and Housing Act, Government Codes Section 940 et.seq.

65.    DEFENDANTS intentionally discriminated against PLAINTIFF because of his race

AMENDED COMPLAINT FOR DAMAGES                                                          13

1    in violation of Title VII by the following actions:

2        66.    DEFENDANTS took disciplinary action against PLAINTIFF in the form of putting

3    him on administrative leave, suspending him without pay, filing a Notice of Intention to Dismiss.

4    The incident underlying these disciplinary actions was almost identical to an incident involving

5    Assistant Principal Honea.  Assistant Principal Honea pushed and physically restrained an African-

6    American student. He was not disciplined in anyway.  PLAINTIFF restrained a Mexican-American

7"   student and was severely disciplined by the administration, including Assistant Principal Honea.

8        67.    Racial animus is evident by comments made by Assistant Principal Honea in a

9    separate but similar incident involving Latino Students and an African -American teacher.  In that

10   incident, Assistant Principal Honea made a comment about "big black men shouldn't be hitting

11   Latino boys" or words to this affect.

12       68.    The Latino administrator, Honea, is a managing agent of the District.  Additionally,

13   the District took no further action to investigate the allegations of misconduct against PLAINTIFF.

14       69.    As a direct and proximate result of DEFENDANTS' illegal conduct, PLAINTIFF

15   suffeted the following injuries and damages.

16       a.    PLAINTIFF was placed in administrative leave.  He missed financial opportunities

17            because he was not eligible to participate in District Buy Back Days.

18       b.    PLAINTIFF suffered 'damage to his retirement benefits.

19       c.    PLAINTIFF suffered economic and non-economic damages, including but not

20            limited, mental anguish and emotional distress.

21       e.    PLAINTIFF suffered physical illness.

22       f.    PLAINTIFF is entitled to an award of attorney fees and costs under Title VII, 42

23   U.S.C. §2000e-5(k)

24       Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

25                        SECOND CAUSE OF ACTION
                    (Retaliation under Title VII and California FERA)
26                        AGAINST ALL DEFENDANTS
27       70.    Paragraphs 1 through 69 of this Complaint are hereby incorporated in and made a

     part of this Second Cause of Action.
28

AMENDED COMPLAINT FOR DAMAGES                                    14

71.    Between 1999 and 2002 PLAINTIFF engaged in protected activity by bringing state' and national attention to budget irregularities at King Estates Middle School.  PLAINTIFF wrote numerous letters to local, state and federal officials, requesting an investigation and audit into the King Estates Middle School expenditures.

72.    These acts        school site and district administrators.  These administrators were agents of the DEFENDANTS.  These agents engaged in multi-year retaliatory campaign which included: three involuntary transfers, multiple assignment changes within a school semester, class assignments that were outside PLAINTIFF's credential, unfavorable school placements, non-assignment, complete-failure to address PLAINTIFF's many grievances and placing PLAINTIFF on administrative leave, suspending PLAINTIFF without pay, and taking other disciplinary actions against PLAINTIFF of an incident the District took no steps to investigate.

73.    The acts above were motivated by racial and gender animus.

74.    As a proximate and legal result of DEFENDANTS' retaliatory action against him, as alleged above, PLAINTIFF has been harmed in that he has suffered loss of wages, salary and benefits.  As a result of such discrimination and consequent harm, PLAINTIFF has suffered such damages in an amount according to proof.

75.    The aforementioned acts of DEFENDANTS constitute unlawful discrimination against PLAINTIFF because of his race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  and California FEHA.

76.    Said conduct was the legal and proximate cause of damages. to PLAINTIFF. As a result, PLAINTIFF suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, anxiety and pain.

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

THIRD CAUSE OF ACTION
DISCRIMINATION & FAILURE TO INTERVENE
( Under Title VII and California FEHA)
AGAINST ALL DEFENDANTS

77.    Paragraphs 1 through 76 of this Complaint are hereby incorporated in and made a part of this Third Cause of Action.

78.    DEFENDANTS  have an affinnative duty under Title VII and FEHA to take proper

AMENDED COMPLAINT FOR DAMAGES                                      15

1  and necessary action to the protect PLAINTIFF from discrimination and to prevent discrimination

2  in all forms in the workplace.

3        79.    DEFENDANTS violated the law as established in Title VII and FEHA by failing to

4  intervene and protect PLAINTIFF from discrimination and prevent discrimination in the workplace.

5        80.    Said conduct was the legal and proximate cause of damages to PLAINTIFF. As a

6  result, PLAINTIFF suffered and continues to suffer mental and emotional distress, humiliation,

7  embarrassment, anxiety and pain.

8                        FOURTH CAUSE OF ACTION
        (Violation of United States Civil Rights Laws: 42 U.S.C. §§ 1983, 1985, 1981)
9                        AGAINST ALL DEFENDANTS
        81.    Paragraphs 1 through 80 of this Complaint are hereby incorporated in and made **a part**
10
   of this Fourth Cause of Action.
11
        82.    DEFENDANTS are persons who, under color of law and in the scope of their
12
   employment have subjected PLAINTIFF to the deprivation of their civil rights as guaranteed by the
13
   First, Fourth and Fourteenth Amendments of the United States Constitution.  Said rights include
14
   PLAINTIFF's right to free speech, right to privacy, and substantive and procedural due process
15
   guaranteed by the First, Fourth and Fourteenth Amendments.
16
        83.    DEFENDANTS and their agents, acting under color of state authority in their official
17
   state capacities conspired among each others to deprive PLAINTIFF of his constitutional. Such
18
   conspiracy to deprive an individual of his constitutional rights  is a violation of the laws of the
19
   United States, 42 U.S.C. § 1985.
20
        84.    There existed a contract of employment between DEFENDANT and PLAINTIFF
21
   when PLAINTIFF was hired by the DEFENDANT.  The DEFENDANT's agents, acting under color
22
   of state authority, illegally interfered with and breached the contract between DEFENDANT and
23
   PLAINTIFF FERGUSON in violation of 42 U.S.C. § 1981 in November of 2006 when
24
   DEFENDANT suspended PLAINTIFF without pay.
25
        85.    Said conduct was the legal and proximate cause of damages to PLAINTIFF. As a
26
   result, PLAINTIFF suffered and continues to suffer mental and emotional distress, humiliation,
27
   embarrassment, anxiety and pain.
28

AMENDED COMPLAINT FOR DAMAGES                                          16

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

FIND CAUSE OF ACTION
(Breach of Contract)
AGAINST DEFENDANT OUSD

86.    Paragraphs 1 through 85 of this Complaint are hereby incorporated in and made a part of this Fifth Cause of Action.

87.    Outside of the Collective Bargaining Agreement, PLAINTIFF's employment with DEFENDANT DISTRICT governed by the following understood conditions:

a.    DEFENDANTS would treat PLAINTIFF in a fair and reasonable manner;

b.    DEFENDANTS would not discriminate against PLAINTIFF on the basis of race, nor retaliate against him for speaking up on behalf of himself and other employees.

This total employment agreement was evidenced by various oral representations

88.    PLAINTIFF has performed all the conditions of the agreement to be performed by him.  He has, at all time, been ready, willing and able to perform and has offered to perform all conditions of this agreement.

89.    Despite the representations made to PLAINTIFF, DEFENDANTS breached the terms of the employment agreement.

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

SIXTH CAUSE OF ACTION
(Breach of the Covenant of Good Faith and Fair Dealing)
AGAINST DEFENDANT OUSD

90.    Paragraphs 1 through 89 of this Complaint are hereby incorporated in and made a part of this Sixth Cause of Action.

91.    The employment agreement contained an implied covenant of good faith and fair dealing under which DEFENDANTS promised to refrain from doing any act that would prevent or impede PLAINTIFF from performing all the conditions of his employment.

92.    DEFENDANTS breached the implied covenant of good faith and fair dealing by denying PLAINTIFF a work environment free of harassment and discrimination.

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

SEVENTH CAUSE OF ACTION
(Defamation - Slander and Libel)
AGAINST DEFENDANTS OUSD, HONEA and STATHAM

AMENDED COMPLAINT FOR DAMAGES                                        17

93.    Paragraphs 1 through 92 of this Complaint are hereby incorporated in and made a part of this Seventh Cause of Action.

94.    DEFENDANT HONEA made several false statements of fact regarding the March 9, 2006 incident at Havenscourt Middle School. DEFENDANT HONEA repeated false allegations made by the student to several people, knowing them to be false or with reckless disregard of the truth. DEFENDANT HONEA took no steps to independently verify the allegations of the students. There was ample hat the students allegations were false from the student's conflicting stories and disciplinary history of the student involved in the incident.

95.    DEFENDANT STATHAM repeated the false allegations in the Statement of Charges. STATHAM repeated the false allegation knowing them to be false or with reckless disregard of the truth. STATHAM took no steps to independently verify the allegations of the students. There was ample hat the students allegations were false from the student's conflicting stories and disciplinary history of the student involved in the incident.

96.    The false statements of fact described herein, above and below, were made to imply that PLAINTIFF was unfit to perfonn in his profession as a teacher. The false statements include:

c.    That PLAINTIFF engaged in hate Speech, referring to the Student as a 'faggot' and/or a 'jackass'

d.    That PLAINTIFF grabbed the student and slammed him against a wall several times, causing him to hit a metal fire extinguisher box

97.    Said conduct was the legal and proximate cause of damages to PLAINTIFF. DEFENDANTS conduct was willful, wanton, malicious, fraudulent and in conscious disregard for the rights of PLAINTIFF. As a result, PLAINTIFF suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, anxiety and pain.

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

**EIGHTH CAUSE OF ACTION**
(Invasion of Privacy- False Light)
AGAINST DEFENDANTS OUSD, HONEA and STATHAM

98.    Paragraphs 1 through 97 of this Complaint are hereby incorporated in and made a part of this Eighth Cause of Action.

99.    The untrue statements by HONEA and STATHAM set forth above depicted PLAINTIFF in a false light.  The false light  in which Mr. Ferguson were placed would be highly offensive to a reasonable person.

100.    Both HONEA and STATHAM had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Mr. Ferguson would be placed.

101.    Said conduct was the legal and proximate cause of damages to PLAINTIFF. DEFENDANTS' conduct was willful, wanton, malicious, fraudulent and in conscious disregard for the rights of PLAINTIFF.  As a result, PLAINTIFF suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, anxiety and pain.

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
AGAINST ALL DEFENDANTS

102.    Paragraphs 1 through 101 of this Complaint are hereby incorporated in and made a part of this Ninth Cause of Action.

103.    The conduct of DEFENDANTS as set forth herein was extreme, outrageous and unprivileged beyond the scope of conduct which should be tolerated in a Democratic and Civilized Society, and was so extreme and outrageous as to exceed all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  DEFENDANTS committed the aforementioned extreme and outrageous and unprivileged acts with the intent to cause and inflict emotional distress upon PLAINTIFF.  DEFENDANTS' conduct was also committed with reckless disregard of the probability of causing emotional distress to PLAINTIFF.

104.    As direct and legal result of DEFENDANTS' willful, intentional, and malicious conduct as set forth herein, PLAINTIFF has suffered severe and extreme mental and emotional distress.

Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

### TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
AGAINST ALL DEFENDANTS

105.    Paragraphs 1 through 104 of this Complaint are hereby incorporated in and made a

AMENDED COMPLAINT FOR DAMAGES                                              19

1   part of this Tenth Cause of Action.

2       106.   The conduct of DEFENDANTS, and each of them, as set forth herein was negligent,

3   in that said conduct failed to exercise reasonable care to avoid harming the PLAINTIFF.  That by

4   reason of the DEFENDANTS' negligence, PLAINTIFF were caused to suffer extreme mental

5   distress, humiliation, embarrassment, extreme shock and nervousness.

6       107.   Said conduct was the legal and proximate cause of damages to PLAINTIFF. As a

7   result, PLAINTIFF suffered and continues to suffer mental· and emotional distress, humiliation,

8   embarrassment, anxiety and pain.

9       Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

10                  ELEVENTH CAUSE OF ACTION
                  (Violations of the UNRUH Civil Rights Act)
11                     (Section 52.1 and 52.3)
                    AGAINST ALL DEFENDANTS
12      108.   Paragraphs 1 through 107 of this Complaint are hereby incorporated in and made a

13  part of this Eleventh Cause of Action.

14      109.   DEFENDANTS are persons who, under color of law and in the scope of their

15  employment have subjected PLAINTIFF to the deprivation of their civil rights as guaranteed by the·

16  First, Fourth and Fourteenth Amendments of the United States Constitution.  Said rights **include**

17  PLAINTIFF's right to free speech and substantive and procedural due process guaranteed by the

18  First, Fourth and Fourteenth Amendments.

19      -110.   At all times herein mentioned DEFENDANTS RAMON HONEA, KIMBERLY

20  STATHAM, and  JACQUELINE PHILLIPS acted or purported to act within the course and scope

21  of their employment and under color of law.

22      111.   DEFENDANT RAMON HONEA wrongfully alleged that PLAINTIFF used non-

23  privileged force and hate language during the March 9, 2006 incident.  Further, without conducting

24  any independent investigation of the truth of the allegation, DEFENDANT HONEA pushed the site-

25  level and district administration to discipline Mr. Ferguson.  At a meeting about a similar incident

26  involving a different African American Student, DEFENDANT HONEA made a comment about

27  "big black men,  hitting Latino kids."

28      112.   DEFENDANTS JACQUELINE PHILLIPS and KIMBERLY  STATHAM took

1  disciplinary action against PLAINTIFF without doing any independent investigation, despite ample

2  evidence that called into question the veracity of the complaining student's statement.  Neither

3  DEFENDANT took any action to discipline DEFENDANT HONEA, a Latino man, when he was

4  involved in a substantially similar incident with an African American youth.

5      113.    Said conduct was the legal and proximate cause of damages to PLAINTIFF . As a

6  result, PLAINTIFF suffered and continues to suffer mental and emotional distress, humiliation,

7  embarrassment, anxiety and pain.

8      Wherefore, PLAINTIFF prays for judgment as more fully set forth below.

9                          **PRAYER FOR RELIEF**

10     **WHEREFORE,** PLAINTIFF pray judgment be entered against all DEFENDANTS

11  and each of them jointly and severally:

12     1.  For economic and non-economic damages in an amount according to proof.

13     2.  For punitive damages against all DEFENDANTS except DEFENDANT OAKLAND

14  UNIFIED SCHOOL DISTRICT in an amount according to proof.

15     3.  For an award costs,  expenses and reasonable attorney's fees pursuant to 42 U.S.C.

16  §1988.

17     4.  To Grant such other and further relief as the Court may deem just and proper.

18                      **<u>DEMAND FOR JURY TRIAL</u>**

19     PLAINTIFF hereby demand a trial by jury for all issues so triable.

20  DATED: AUGUST 27, 2007

21                          LAW OFFICER OF BONNER & BONNER

22

23

24                          A. CABRAL  BONNER

25

26

27

28

AMENDED COMPLAINT FOR DAMAGES                                    21