# EXHIBIT 1

1  CHARLES A. BONNER, ESQ. SB# 85413
   A. CABRAL BONNER, ESQ. SB#
2  **LAW OFFICES OF BONNER & BONNER**
   1913 BRIDGEWAY
3  SAUSALITO, CA 94965
   TEL: (415) 331-3070
4  FAX: (415) 331-2738

Rec'd 5/21/07 ?.P.

RECEIVED

5  ATTORNEYS FOR CLAIMANT
   JAMES FURGESON
6

7

8              **OAKLAND UNIFIED SCHOOL DISTRICT**

9  JAMES FURGESON,                    Case No:

10         CLAIMANT,                  **CLAIM FOR DAMAGES**
                                      1. Violation of United States Civil Rights
11     v.                               Laws:
                                      2. Retaliation (Title VII FEHA);
12 OAKLAND UNIFIED SCHOOL            3. Employment Discrimination (Title VII);
   DISTRICT, KIMBERLY STATHAM,       4. 42 U.S.C. § 1983; 1985
   RAMON HONEA, JACQUELINE           5. Breach of Contract;
13 PHILLIPS and DOES 1 - 50,         6. Breach of the Covenant of Good Faith and
                                        Fair Dealing;
14         DEFENDANTS.               7. Slander;
                                     8. Libel;
15                                   9. Invasion of Privacy;
                                     10.Intentional Infliction of Emotional
16                                      Distress;
17 _____/         11.Negligence

18

19

20

21     **TO:**      **GENERAL COUNCIL FOR THE OAKLAND UNIFIED SCHOOL
                     DISTRICT  25 2ND STREET OAKLAND, CA 94606.**

22     **FROM:**    **LAW OFFICES BONNER & BONNER. ALL COMMUNICATIONS
23                  CONCERNING THIS CLAIM SHALL BE ADDRESSED TO LAW
                    OFFICES OF BONNER & BONNER AT THE ABOVE REFERENCED
24                  ADDRESS.**

25         CLAIMANT JAMES FERGUSON alleges as follows:

26                          **INTRODUCTION**

27     1.    JAMES FERGUSON brings this CLAIM to vindicate his constitutional, statutory and

28 common law rights.

CLAIM FOR DAMAGES                                                    1

1    2.    CLAIMANT JAMES FERGUSON (hereinafter "Ferguson " or "Mr. Ferguson")

2    alleges that during his tenure as an employee with OAKLAND UNIFIED SCHOOL DISTRICT

3    (hereinafter "DISTRICT" or "OUSD"), DISTRICT discriminated against him on the basis of his race

4    and gender and engaged in a pattern and practice of disparate treatment, including denying him the

5    privileges, terms and conditions of employment afforded to other employees. Additionally,

6    DISTRICT repeatedly retaliated against FERGUSON for his constitutionally protected activity.

7    **JURISDICTION AND VENUE**

8    3.    This CLAIM is made pursuant to California Government Code Section 960, and all

9    additional applicable codes pertaining to filing claims against public entities.

10    4.    DEFENDANTS are each and all subject to suit in that DEFENDANT, DISTRICT

11    is as school district who regularly employs 15 or more persons.

12    5.    DEFENDANTS' conducts its business and is a government agency operating under

13    color of state authority in this judicial district.

14    **PARTIES**

15    6.    CLAIMANT JAMES FERGUSON is and was at all times relevant herein a citizen

16    of the United States and resident of Oakland, California. At all times herein mentioned CLAIMANT

17    JAMES FERGUSON was a teacher, employed by DEFENDANT DISTRICT.

18    7.    DEFENDANT OAKLAND UNIFIED SCHOOL DISTRICT is a municipal

19    corporation, organized under the laws of the state of California, doing business in California as a

20    government subdivision under color of State authority and subject to the laws of this State and the

21    United States.

22    8.    DEFENDANT KIMBERLY STATHAM is the current State Administrator for the

23    Oakland Unified School District. At all times here in relevant, she was appointed to oversee the

24    School District and was responsible for the supervision and management of school site and district

25    level administrators.

26    9.    At all times mentioned herein STATHAM was acting under color of State law, to wit:

27    under the colors of the statutes, ordinances, regulations, policies, customs, and usages of the State

28    of California, and was acting within the course and scope of her employment.

CLAIM FOR DAMAGES                                                                 2

10.    DEFENDANT RAMON HONEA was, at all times herein relevant the Assistant Principal of Havenscourt Middle School. As an assistant principal, DEFENDANT HONEA was an Agent and Manager of DEFENDANT DISTRICT.

11.    DEFENDANT JACQUELINE PHILLIPS was, at all times herein relevant the Principal of Havenscourt Middle School. As principal, DEFENDANT PHILLIPS was an Agent and Manager of DEFENDANT DISTRICT. (All DEFENDANTSs hereinafter collectively referred to as "DEFENDANTS")

## RESPONDEAT SUPERIOR

12.    All of the described conduct, acts, and failures to act are attributed to agents and employees under the direction and control, and with the permission, consent and authorization of DEFENDANTS. Said acts, conduct and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to exhaust his administrative remedies, FERGUSON files this CLAIM against the Oakland Unified School District for a patter and practice, and a continuing violation of his rights, causing economic and non-economic damages, which continues up to, and will continue after, this date of the filing of his CLAIM.

## WORKERS COMPENSATION EXCLUSIVITY DOES NOT APPLY

13.    Each and every wrongful, injurious, negligent, willful, discriminatory, harassing acts, and failure to act, by DEFENDANTS were not a normal incident of employment and were outside the scope of the employment bargain. Thus, the Worker's Compensation exclusive remedy set forth in California Labor Code §3600 et seq. will not preempt nor bar CLAIMANT 's right to recover for damages set forth herein.

## STATEMENT OF FACTS

14.    Mr. Ferguson was and is a teacher employed by the DEFENDANT, OAKLAND UNIFIED SCHOOL DISTRICT. Mr. Ferguson holds a Professional Clear Single Subject Teaching

1  Credential in the field of Social Studies.  He has a supplementary Authorization in Introductory
2  Physical Education, and Sports and Games.

3        15.     During the 1997-1998, 1998-1999 and 1999-2000 School years, Mr. Ferguson taught
4  at King Estates Middle School.  At the time, King Estates Middle School was a public middle school
5  in the OUSD.  Joslin Johnson was the principal of King Estates during the 1998, 1999, and 2000
6  school years.  Johnson became principal in 1998.

7        16.     In the Spring of the 1998, Mr. Ferguson on behalf of the School's Faculty Council
8  requested that Principal Johnson provide the Faculty Council with a report on the School Budget.
9  Principal Johnson did not provide the requested information.

10       17.     Throughout the 1999-2000 school year Mr. Ferguson as well as members of the
11  Faculty Council (FC) and the School Site Council (SSC) urged Johnson to be forthcoming with
12  information about the school budget because of concerns of mismanagement of school funds.

13       18.      In the fall of the 1999-2000 school year, CLAIMANT Mr. Ferguson, renewed his
14  request to review the school's budget.  Principal Johnson responded by having a copy of the budget
15  placed in each teachers' box.  After reviewing the budget, Mr. Ferguson and members of the FC and
16  the SSC raised questions about the appropriate expenditure of $113,272 for 2 FTE's funded under
17  EIA-SCE.

18       19.     Also in the fall of the 1999-2000 school year, King Estates was selected to become
19  part of the Immediate Initiative Underachieving Schools Program (II/USP).  This program offered
20  funding to low performing schools to develop and implement school-wide Actions Plans aimed at
21  improving student outcomes.  During the 1999-2000 school year, Mr. Ferguson was then the
22  Oakland Educational Association (OEA) representative for King Estates.  Concerned about the
23  bargaining impact of the II/USP legislation, in November of 1999, OEA appointed Mr. Ferguson to
24  oversee the process as the exclusive bargaining agent's representative to the 13 broad-based school
25  site and community teams within OUSD.

26       20.     Throughout the fall and into the winter of the 1999-2000 school year, Mr. Ferguson
27  and members of the FC and the SSC made numerous requests of Principal Johnson to explain the
28  budget anomalies.  Despite the groups many inquires Principal Johnson was not forthcoming with

CLAIM FOR DAMAGES                                                                        4

1   information about the questionable budget items.  Mr. Ferguson, on behalf of the Faculty Council

2   and members of the School Site Council escalated their efforts by writing letter to key district and

3   state personnel, urging them to conduct an audit of school site expenditures.  Mr. Ferguson wrote

4   letters to interim Superintendent Musgrove in 1999 and also to incoming Superintendent Chaconas

5   in 2000.  In January of 2000, Mae Wheaton, the School Site Council Chairperson wrote a letter to

6   Tom Lugo, at the California State Department of Education.  All of these letters voiced concern

7   about King Estate's state and federal categorical expenditures and  Principal Johnson's lack of

8   forthrightness.

9         21.    In May of 2000, Mr. Ferguson wrote another letter to Superintendent Dennis

10  Chaconas requesting his intervention in resolving the issues concerning budget and non-disclosure

11  at King Estate by Ms. Johnson.

12        22.    On June 9, 2000 Principal Johnson informed Mr. Ferguson that for the 2000-2001

13  school year his position as Technology Lab teacher was being eliminated.  Additionally, Principal

14  Johnson informed Mr. Ferguson that his Supplementary Authorization (Sports and Games/Intro.

15  Physical Educ.) did not qualify Mr. Ferguson to teach Physical Education because the Physical

16  Education Teachers were going to be now also required to teach one period of Science or one period

17  of Math. Mr. Ferguson is informed, believes and hereon alleges that combining Physical Education

18  with Math and Science was an unprecedented deviation from the standard practices at King Estates.

19  Furthermore, Mr. Ferguson is informed, believes and hereon alleges that in the final master calendar

20  for the 2000-2001 school year the Physical Education teachers taught no period of math or science.

21  Principal Johnson manipulated the Physical Education teaching positions to deny Mr. Ferguson a

22  position at King Estates.  Principal Johnson took this action in retaliation of Mr. Ferguson's

23  constitutionally protected acts of speaking out on behalf of the teacher, parents, and students at King

24  Estates, and demanding accountability.  The District facilitated this retaliation by failing to take any

25  action to assist Mr. Ferguson in retaining his position at King Estates.

26        23.    On or around June 16, 2000, Mr. Feguson filed two level 1 Grievances against

27  Principal Johnson,, 99-088 and 99-089.  Grievance 99-088 challenged Principal Johnson's decision

28  to involuntarily transfer Mr. Ferguson away from King Estates.  Grievance 99-089 challenged

1    Principal Johnson's decision to pay the teachers who worked on the II/USP Action Plan $13.51 per

2    hour instead of the $21.61 that they were entitled to.

3        24.    Additionally, on June 16, 2000 Mr. Ferguson filed with the District Ombudsperson,

4    Delia Ruiz, a Level 1 Uniform Complaint concerning the failure of Ms. Johnson to provide detailed

5    budget expenditure and budget transfer information.

6        25.    After filing the Uniform Complaint Mr. Ferguson lost his assignment at King Estates.

7    In the Summer of 2000, Mr. Ferguson tried repeatedly to meet with the new King Estates teacher

8    Emily Gladis to discuss returning to King Estates. Ms. Gaddis refused to meet with Mr. Ferguson.

9    Mr. Ferguson then went to Superintendent Chaconas for support in retaining his position at King

10   Estates. Mr. Chaconas did not respond to Mr Ferguson's communications on this issue.

11       26.    In August of 2000, District Human Resources assigned Mr. Ferguson to Castlemont

12   High School to teach Social Studies. Mr. Ferguson accepted the position at Castlemont, however

13   he was not offered the opportunity to chose from available vacancies in the district.

14       27.    During the 2000-2001, 2001-2002, and 2002-2003 school years Mr. Ferguson

15   continued to pursue the Uniform Complaint he filed in June of 2000. In November of 2000, Mr.

16   Ferguson filed a Level II Appeal of the Complaint against Principal Johnson. In December of 2000,

17   Mr Ferguson wrote letters to Howie Delane and Gary Page at the State Department of Education.

18   In these letters Mr. Ferguson requested assistance in resolving the Uniform Complaint against

19   OUSD. In February of 2001, Mr. Ferguson met with School Board Member Noel Gallo regarding

20   the Uniform Complaint and his involuntary transfer and consolidation. In April of 2001, Mr.

21   Ferguson sent letters to all California State Board of Education members regarding OUSD's

22   non-compliance in the II/USP plan implementation at King Estates Middle school. Also in April,

23   Mr. Ferguson sent a letter to Barbara Brandes, at the State Department of Education regarding II/USP

24   non-compliance at King Estates Middle School. Also in April of 2001, Mr. Ferguson sent a letter

25   requesting Federal intervention in the misapplication of Compensatory Funding for the II/USP plan

26   to the United States Department of Education Office of Civil Rights. In June of 2001, Mr. Ferguson

27   had a discussion with then Oakland Mayor Jerry Brown regarding the issue in OUSD. In June and

28   July of 2001 Mr. Ferguson had several more correspondences with the Office of Civil Rights

1  regarding his Uniform Complaint.

2      28.    In August of 2001, Mr. Ferguson had a meeting with Superintendent Chaconas, and
3  OEA executive director Bruce Colwell. In this meeting, the group discussed creating a new position
4  for Mr. Ferguson, implementing a comprehensive computer-based literacy program. The creation
5  of the position would resolve the grievance filed by Mr. Ferguson. Superintendent Chaconas took
6  no action to implement the settlement agreement.

7      29.    A year later, in July of 2002, Gary Page, Educational Programs Assistant, at the
8  California Department of Education offered to facilitate a mediation between Mr. Ferguson and the
9  District over the issues raised in the Uniform Complaint.

10     30.    August 26, 2002 was the first day of the fall semester for the 2002-2003 school year.
11 Mr. Ferguson's class schedule included five sections of 9th grade Physical Education. This was
12 consistent with his credential. On August 27, 2002, Assistant Principal Rick Gaston, approached
13 Mr. Ferguson and asked him about teaching two study skills classes. Mr. Ferguson stated that he
14 would need to think it over and later provide Gaston with an answer.

15     31.    On August 28, 2002 Mr. Ferguson met with Gary Page and Stephanie Papas of the
16 California Department of Education, regarding the Uniform Complaint investigation. OUSD turned
17 down Mr. Ferguson and Mr. Page's offer of mediation to resolve the Uniform Complaint. Mr. Page

18     32.    On August 29, 2002, the following day, Assistant Principal Rick Gaston, changed Mr.
19 Ferguson's class schedule without Mr. Ferguson's agreement. Mr. Ferguson was given a mixed class
20 of ninth, tenth, eleventh, and twelfth grade students. Teaching these students compromised Mr.
21 Ferguson's supplemental credential. Mr. Ferguson protested the change in his teaching assignment.
22 In September of 2002, Mr. Ferguson's teaching assignment was changed once again. This time the
23 Administration took away the two study skills classes, leaving Mr. Ferguson with only 3 morning
24 Physical Education classes. Furthermore, Castlemont principal Debra Lindo, then threatened that
25 if Mr. Ferguson did not accept a U.S. History teaching assignment, she would implement a 3/5
26 consolidation action.

27     33.    Despite Mr. Ferguson's protests, the site administration made yet another change to
28 Mr. Ferguson's schedule. In October of 2002, the site administration made Mr. Ferguson roam

CLAIM FOR DAMAGES                                                                    7

1    between three different classrooms teaching History and Physical Education.  When Mr. Ferguson

2    informed Principal Lindo that her acts were in direct conflict with the Collective Bargaining

3    Agreement, Principal Lindo replied that according to the Human Resources Department, all Mr.

4    Ferguson was entitled to was a job.

5          34.    Site administration with full support and sanction of the District assigned Mr.

6    Ferguson to teach U.S. History in one teachers portable, then teach two periods of Physical

7    Education in the Gym, then teach another period of U.S. History in a different teachers portable.  The

8    administration did not give Mr. Ferguson keys to the portables. Therefore, if the regular teachers are

9    not in the portable, Mr. Ferguson and his class have to wait for a custodian to open the room.

10          35.    Changing Mr. Ferguson's teaching assignment three times during the first three

11    months of school and subjecting him to such unprofessional teaching conditions were acts of

12    retaliation by the District for Mr. Ferguson's continued attempts to have the state and federal

13    government officials investigate the facts underlying his Uniform Complaint.

14          36.    In October of 2002, Mr. Ferguson filed a Level 1 Grievance (2002-18) with Principal

15    Lindo.  Additionally, in November of 2002, Mr. Ferguson filed an Unfair Practice Charge against

16    OUSD (SF-CE-2299-E) and charged OEA (SF-CO-620-E) for violating their duty of Fair

17    Representation.

18          37.    The Site Administrators and the District took virtually no action to resolve Mr.

19    Ferguson's Grievance.  Principal Lindo's did not respond to Mr. Ferguson's level I Grievance in a

20    timely manner.  Sue Woerhle, Executive Director High Schools, did not respond at all to Mr.

21    Ferguson's level II Grievance.  Mr. Ferguson then appealed the Grievance to level II, sending it to

22    Superintendent Dennis Chaconas.  Once again District did not respond.  In December of 2002,

23    Principal Lindo delivered a Notice of Anticipated Consolidation of Position to Mr. Ferguson.

24          38.    The stress of the ordeal was having a deleterious effect on Mr. Ferguson's health. He

25    was experience episodes of chest pain as well as back and neck spasms.  At the instruction of his

26    physician, Mr. Ferguson went out on medical leave in January of 2003.

27          39.    Mr. Ferguson remained on medical leave for the remainder of the semester.  In that

28    time the District took little action to resolve Mr. Ferguson's grievance.  Instead, Principal Lindo took

CLAIM FOR DAMAGES                                                                                    8

1  further retaliated against Mr. Ferguson.  On February 4, 2003, Principal Lindo sent Mr Ferguson a
2  letter requesting intrusive, private and confidential information about Mr. Ferguson's illness.
3  Principal had no right to any of the information she requested.  The request was made to harass Mr.
4  Ferguson and further retaliate against him.  On February 10, 2003, Principal Lindo sent Mr. Ferguson
5  a letter retracting the February 4 letter.

6       40.    In May of 2003, Mr. Ferguson met with Assistant Superintendent Louis Cohen.  At
7  this meeting Mr. Cohen acknowledged that Lindo and Gaston's actions violated the Collective
8  Bargaining Agreement.  Mr. Cohen agreed to work on finding Mr. Ferguson a permanent Physical
9  Education position at a Middle School.  Mr. Cohen did not offer Mr. Ferguson a specific position
10  nor did he inform Mr. Ferguson of a specific school where Mr. Ferguson might be placed.  During
11  this meeting, Mr. Ferguson did not agree to accept any specific placement, because Cohen did not
12  offer him a specific placement.

13      41.    In June of 2003, Mr. Ferguson received a letter from District Human Resources,
14  informing him that for the 2003-2004 school year he was assigned to Cole School to teach Physical
15  Education.  This transfer to Cole was involuntary.  The District never asked Mr. Ferguson if he
16  wanted to make a change, nor did they give him any information about what positions were open to
17  him.  Additionally, Mr. Ferguson is informed believes and hereon alleges that Castlemont had an
18  opening for a Physical Education teacher for the 2003-2004 school year.  The position was for five
19  periods of Physical education, similar to the schedule Mr. Ferguson had at the beginning of the
20  2002-2003 school year.  District could have assigned Mr. Ferguson to teach five periods of ninth
21  grade at Castlemont.  Instead, they violated his rights under the Collective Bargaining Agreement
22  and assigned him to Cole in further retaliation for his constitutional protected conduct.

23      42.    Once again the stress of the situation was too much for Mr. Ferguson to handle.  In
24  October of 2003, Mr. Ferguson went out on medical stress leave.  Mr. Ferguson returned to Cole in
25  May of 2004.

26      43.    Mr. Ferguson returned to Cole for the 2004-2005 school year.  He taught Physical
27  Education, uninterrupted for the entire year.

28      44.    The District, however, was not done punishing Mr. Ferguson for his constitutionally

protected conduct. In August of 2005, Mr. Ferguson reported to Cole for the start of the 2005-2006 school year. When he arrived on campus a site administrator informed him that he had been transferred. When he contacted the District, they told him he did not have an assignment and that he could be a roving teacher.

45.    Before the start of the 2005-2006 school year, the District informed Mr. Ferguson that he could take a Physical Education position at Havenscourt Middle School

46.    On March 9, 2006, during first period, Mr. Ferguson was involved in an incident with a student. The student was being disruptive and defiant. He was running around the gym and was not responding to Mr. Ferguson's requests for him to return to the class. Believing that the student was a threat to himself and the many other individuals in the gym, Mr. Ferguson attempted to restrain the student. The student tried to evade Mr. Ferguson and ended up banging into the wall 2 or three times.

47.    Mr. Ferguson was finally able to restrain the student. The student calmed down and walked across the gym to the rest of his class. The student did not act up for the rest of the period.

48.    Assistant Principal Ramon Honea visited Mr. Ferguson during his second period class to ask Mr. Ferguson about the incident. Mr. Honea informed Mr. Ferguson that the Student alleged that Mr. Ferguson called him a derogatory name and pushed him into a wall. Later that day, Mr Ferguson was called into the Principal's office. During this meeting the student repeated his false allegation, claiming that Mr. Ferguson called him a "faggot". Mr. Ferguson protested and asked Ms. Phillips to query the students in his class about what happened.

49.    At the time of the incident there were a total of three classes in the Gym. Mr. Ferguson was leading his own class and covering for Mr. Gulley. Additionally, Ms. Sultan was leading a class on the other side of the gym. The administration, led by Assistant Principal Honea collected statements from the student involved in the incident and from four friends of the student who was involved in the incident. The administration did not talk to a single member of Mr. Ferguson's class, nor did they talk with other students from Mr. Gulley's class, nor did they talk with any students from Ms. Sultan's class. The administration did not even talk with Ms. Sultan, the other adult in the gym at the time of the incident.

CLAIM FOR DAMAGES                                                                    10

50.    Ms. Phillips asked Ms. Sultan to write a statement about the incident. Ms. Sultan's statement was consistent with Mr. Ferguson's account of the events and inconsistent with the accounts from the students' statements. Additionally, the students' statements are not consistent. In his statement, the student involved in the incident says Mr. Ferguson called him a faggot after the student slid a clipboard to Mr. Ferguson. A different student statement claims that Mr. Ferguson called the boy a "jackass". Additionally, two of the statements don't mention Mr. Ferguson saying anything to the student involved in the incident.

51.    Furthermore, the student involved in the incident had a history of being disruptive in class and being disrespectful to teachers and other students. The student had been disciplined for calling one teacher a "faggot" and calling another teacher a "bitch".

52.    On Friday March 10, 2006 Mr. Ferguson met with the boy's mother. The mother indicated that she was very worried about Miguel. The mother also indicated that she did not wish to see the incident go any further.

53.    Despite the total lack of an adequate investigation into the true events of March 9, 2006, and with more than enough contradictory evidence to suggest to the site administration and the District that the students story may have been false, on March 13, 2006, a representative from District Human resources met Mr. Ferguson and presented him with a letter indicating that he had been placed on administrative leave.

54.    Mr. Ferguson is informed, believes, and hereon alleges that Assistant Principal Honea was involved in an incident where he pushed and attempted to restrain an African America student. The acts involved were very similar to the allegations made against Mr. Ferguson. Mr. Honea is Latino, as was the student involved in the March 9, 2006 incident. Mr. Honea received no discipline for the incident with the African American student. However, Mr. Honea was instrumental in pushing the district to place Mr. Ferguson on administrative leave.

55.    The incident with Mr. Ferguson was not the first time an African American male teacher had been treated differently because of his race and gender. Another African-American Physical Education Teacher, Joe Roberts, was also involved in an incident with several Latino students. Several male Latino students were throwing rocks at Mr. Roberts. The rocks hit Mr.

CLAIM FOR DAMAGES                                                                                          11

1  Roberts in the head and caused him injury. In an effort to defend himself, Mr. Roberts tossed his

2  keys in the direction of the perpetrators. The attackers falsely reported to Mr. Honea that they only

3  threw erasers. Mr. Honea pushed to have Mr. Roberts placed on administrative leave. During a

4  hearing with Mr. Roberts' union representative, Mr. Honea made a biased comment regarding a, "big

5  black man hitting Latino kids."

6       56.     In a meeting on May 17, 2006 District officials told Mr. Ferguson that they would

7  complete their investigation into the March 9 incident by May 19, 2006. The district took no action

8  to further investigate the incident. Mr. Ferguson remained on Administrative Leave for the remainder

9  of the 2005-2006 school year. Mr. Ferguson did not receive any correspondence from the District

10  until September 21, 2006 when he received a letter informing him that the District had been trying

11  to get in touch with him by phone and was unable to do so. The letter also informed Mr. Ferguson

12  that Dasha LaBrie wanted to have a meeting with Mr. Ferguson to discuss the "allegations of

13  misconduct." The letter went on to inform Mr. Ferguson that given the nature of the charges, the

14  district had grounds to suspend Mr. Ferguson without pay.

15       57.     The District made no further contact with Mr. Ferguson until a letter dated October

16  26, 2006, informing Mr. Ferguson that the District was suspending him without pay effective

17  November 1, 2006. The District came to this conclusion without taking any further action to

18  investigate the allegations against Mr. Ferguson. The District was once again retaliating against Mr.

19  Ferguson for the constitutionally protected activity he engaged in between during the 1999-2003

20  school years.

21       58.     On November 1, 2006, District suspended Mr. Ferguson without pay. On November

22  6, 2006 Mr. Ferguson received a Notice of Intent to Dismiss and a Statement of Charges. In the

23  documents, the State Administrator, Kimberly Statham accuses Mr. Ferguson of engaging in hate

24  speech despite the contradicting accounts by the students. The Statement of Charges states that

25  approximately fifty-five students and one teacher witnessed the events, yet Ms. Statham relies solely

26  on the contradicting statements taken the day of the incident. The Statement of Charges had no

27  evidence of any additional investigation beyond accepting the statements of the student involved and

28  his friends.

1    59.    Mr. Ferguson successfully challenged the suspension through a writ of mandate and

2    was returned to his status of paid Administrative leave.

3    60.    By engaging in this Constitutionally protected activity, Mr. Ferguson angered many

4    individuals at the District.  Mr. Ferguson attempted to bring State and National attention to the

5    misappropriation of state and federal funds at an Oakland Public School.  Over the next several years

6    District officials engaged in a series of retaliatory acts designed to drive Mr. Ferguson from the

7    District.  Mr. Ferguson was hired as a teacher in the District in 1992.  In the seven years between

8    1992 and 1999, Mr. Ferguson filed no grievances or complaints.  He had no negative evaluations

9    and no discipline from the district.   In the six years following his attempts to uncover the truth

10   behind the King Estate Budget anomalies, he was involuntarily transferred three times, had his

11   teaching assignment change without his consent three times in the first three months of a school year,

12   he was made to rove between three classrooms, he was assigned to a school with no facilities for

13   Physical Education, he has filed five grievances only one of which was satisfactorily resolved by the

14   district, and he was suspended without pay and is facing dismissal based on an incident that was

15   never investigated by the District.

16                            **FIRST CAUSE OF ACTION**
                          **(Discrimination under Title VII and FEHA)**

17   61.    Paragraphs 1 through 61 of this Complaint are hereby incorporated in and made a part

18   of this First Cause of Action.

19   62.    CLAIMANT is an employee within the meaning of Title VII and belongs to a class

20   protected under the statute, namely African-American. 42 U.S.C. §2000e(f).

21   63.    DEFENDANTS are an employer within the meaning of Title VII. 42 U.S.C.

22   §2000e(b), and within the meaning of the Fair Employment and Housing Act, Government Codes

23   Section 940 et.seq.

24   64.    DEFENDANTS intentionally discriminated against CLAIMANT because of his race

25   in violation of Title VII by the following actions:

26   65.    DEFENDANTS took disciplinary action against CLAIMANT in the form of putting

27   him on administrative leave, suspending him without pay, filing a Notice of Intention to Dismiss.

28   The incident underlying these disciplinary actions was almost identical to an incident involving

1   Assistant Principal Honea. Assistant Principal Honea pushed and physically restrained an African-

2   American student. He was not disciplined in anyway. CLAIMANT restrained a Mexican-American

3   student and was severely disciplined by the administration, including Assistant Principal Honea.

4        66.    Racial animus is evident by comments made by Assistant Principal Honea in a

5   separate but similar incident involving Latino Students and an African -American teacher. In that

6   incident, Assistant Principal Honea made a comment about "big black men shouldn't be hitting

7   Latino boys" or words to this affect.

8        67.    The Latino administrator, Honea, is a managing agent of the District. Additionally,

9   the District took no further action to investigate the allegations of misconduct against CLAIMANT.

10        68.    As a direct and proximate result of DEFENDANTS' illegal conduct, CLAIMANT

11   suffered the following injuries and damages.

12       a.    CLAIMANT was placed in administrative leave. He missed financial opportunities

13             because he was not eligible to participate in District Buy Back Days.

14       b.    CLAIMANT suffered damage to his retirement benefits.

15       c.    CLAIMANT suffered economic and non-economic damages, including but not

16             limited, mental anguish and emotional distress.

17       e.    CLAIMANT suffered physical illness.

18       f.    CLAIMANT is entitled to an award of attorney fees and costs under Title VII, 42

19   U.S.C. §2000e-5(k)

20        Wherefore, CLAIMANT prays for judgment as more fully set forth below.

21   **SECOND CAUSE OF ACTION**<br>**(Retaliation under Title VII and California FEHA)**

22        69.    Paragraphs 1 through 69 of this Complaint are hereby incorporated in and made a

23   part of this Second Cause of Action.

24        70.    Between 1999 and 2002 CLAIMANT engaged in protected activity by bringing state

25   and national attention to budget irregularities at King Estates Middle School. CLAIMANT wrote

26   numerous letters to local, state and federal officials, requesting an investigation and audit into the

27   King Estates Middle School expenditures.

28        71.    These acts angered school site and district administrators. These administrators were

1  agents of the DEFENDANTS.  These agents engaged in multi-year retaliatory campaign which

2  included: three involuntary transfers, multiple assignment changes within a school semester, class

3  assignments that were outside CLAIMANT's credential, unfavorable school placements, non-

4  assignment, complete failure to address CLAIMANT's many grievances and placing CLAIMANT

5  on administrative leave, suspending CLAIMANT without pay, and taking other disciplinary actions

6  against CLAIMANT of an incident the District took no steps to investigate.

7       72.     The acts above were motivated by racial and gender animus.

8       73.     As a proximate and legal result of DEFENDANTS' retaliatory action against him,

9  as alleged above, CLAIMANT has been harmed in that he has suffered loss of wages, salary and

10  benefits.  As a result of such discrimination and consequent harm, CLAIMANT has suffered such

11  damages in an amount according to proof.

12       74.     The aforementioned acts of DEFENDANTS constitute unlawful discrimination

13  against CLAIMANT because of his race and gender in violation of Title VII of the Civil Rights Act

14  of 1964, 42 U.S.C. § 2000e et seq.  and California FEHA.

15       75.     Said conduct was the legal and proximate cause of damages to CLAIMANT. As a

16  result, CLAIMANT suffered and continues to suffer mental and emotional distress, humiliation,

17  embarrassment, anxiety and pain.

18       Wherefore, CLAIMANT prays for judgment as more fully set forth below.

19            **THIRD CAUSE OF ACTION**
**DISCRIMINATION & FAILURE TO INTERVENE**

20  ( Under Title VII and California FEHA)

21       76.     Paragraphs 1 through76 of this Complaint are hereby incorporated in and made a part

of this Third Cause of Action.

22

23       78.     DEFENDANTS  have an affirmative duty under Title VII and FEHA to take proper

24  and necessary action to the protect CLAIMANT from discrimination and to prevent discrimination

in all forms in the workplace.

25

26       79.     DEFENDANTS violated the law as established in Title VII and FEHA by failing to

intervene and protect CLAIMANT from discrimination and prevent discrimination in the workplace.

27

28       80.     Said conduct was the legal and proximate cause of damages to CLAIMANT. As

1    a result, CLAIMANT suffered and continues to suffer mental and emotional distress, humiliation,

2    embarrassment, anxiety and pain.

3

4                                    **FOURTH CAUSE OF ACTION**
                **(Violation of United States Civil Rights Laws: 42 U.S.C. §§ 1983, 1985)**

5        81.    Paragraphs 1 through 80 of this Complaint are hereby incorporated in and made a part

6    of this Fourth Cause of Action.

7        82.    DEFENDANTS are persons who, under color of law and in the scope of their

8    employment

9     have subjected CLAIMANT to the deprivation of their civil rights as guaranteed by the First, Fourth

10   and Fourteenth Amendments of the United States Constitution.  Said rights include CLAIMANT's

11   right to free speech, right to privacy, and substantive and procedural due process guaranteed by the

12   First, Fourth and Fourteenth Amendments.

13       83.    DEFENDANTS and their agents, acting under color of state authority in their official

14   state capacities conspired among each others to deprive CLAIMANT of his constitutional. Such

15   conspiracy to deprive an individual of his constitutional rights  is a violation of the laws of the

16   United States, 42 U.S.C. § 1985.

17       84.    Said conduct was the legal and proximate cause of damages to CLAIMANT. As a

18   result, CLAIMANT suffered and continues to suffer mental and emotional distress, humiliation,

19   embarrassment, anxiety and pain.

20       Wherefore, CLAIMANT prays for judgment as more fully set forth below.

21                                    **FIFTH CAUSE OF ACTION**
                                       **(Breach of Contract)**

22       85.    Paragraphs 1 through  84 of this Complaint are hereby incorporated in and made a

23   part of this Fifth Cause of Action.

24       86.    Outside of the Collective Bargaining Agreement, CLAIMANT's employment with

25   DEFENDANT DISTRICT governed by the following understood conditions:

26       a.     DEFENDANTS would treat CLAIMANT in a fair and reasonable manner;

27       b.     DEFENDANTS would not discriminate against CLAIMANT on the basis of race,

28              nor retaliate against him for speaking up on behalf of himself and other employees.

87.    This total employment agreement was evidenced by various oral representations

88.    CLAIMANT has performed all the conditions of the agreement to be performed by him. He has, at all time, been ready, willing and able to perform and has offered to perform all conditions of this agreement.

89.    Despite the representations made to CLAIMANT, DEFENDANTS breached the terms of the employment agreement.

Wherefore, CLAIMANT prays for judgment as more fully set forth below.

## SIXTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

90.    Paragraphs 1 through 89 of this Complaint are hereby incorporated in and made a part of this Sixth Cause of Action.

91.    The employment agreement contained an implied covenant of good faith and fair dealing under which DEFENDANTS promised to refrain from doing any act that would prevent or impede CLAIMANT from performing all the conditions of his employment.

92.    DEFENDANTS breached the implied covenant of good faith and fair dealing by denying CLAIMANT a work environment free of harassment and discrimination.

Wherefore, CLAIMANT prays for judgment as more fully set forth below.

## SEVENTH CAUSE OF ACTION
### (Defamation - Slander and Libel)

93.    Paragraphs 1 through 92 of this Complaint are hereby incorporated in and made a part of this Seventh Cause of Action.

94.    DEFENDANT HONEA made several false statements of fact regarding the March 9, 2006 incident at Havenscourt Middle School. DEFENDANT HONEA repeated false allegations made by the student to several people, knowing them to be false or with reckless disregard of the truth. DEFENDANT HONEA took no steps to independently verify the allegations of the students. There was ample hat the students allegations were false from the student's conflicting stories and disciplinary history of the student involved in the incident.

95.    DEFENDANT STATHAM repeated the false allegations in the Statement of Charges. STATHAM repeated the false allegation knowing them to be false or with reckless disregard of the truth. STATHAM took no steps to independently verify the allegations of the students. There was

1    ample hat the students allegations were false from the student's conflicting stories and disciplinary

2    history of the student involved in the incident.

3    96.    The false statements of fact described herein, above and below, were made to imply

4    that CLAIMANT was unfit to perform in his profession as a teacher.  The false statements include:

5    c.    That CLAIMANT engaged in hate Speech, referring to the Student as a 'faggot'

6    and/or a 'jackass'

7    d.    That CLAIMANT grabbed the student and slammed him against a wall several times,

8    causing him to hit a metal fire extinguisher box

9    97.    Said conduct was the legal and proximate cause of damages to CLAIMANT.

10    DEFENDANTS conduct was willful, wanton, malicious, fraudulent and in conscious disregard for

11    the rights of CLAIMANT. As a result, CLAIMANT suffered and continues to suffer mental and

12    emotional distress, humiliation, embarrassment, anxiety and pain.

13    Wherefore, CLAIMANT prays for judgment as more fully set forth below.

14    **EIGHTH CAUSE OF ACTION**
    **(Invasion of Privacy- False Light)**

15    98.    Paragraphs 1 through 97 of this Complaint are hereby incorporated in and made a

16    part of this Eighth Cause of Action.

17    99.    The untrue statements by HONEA and STATHAM set forth above depicted

18    CLAIMANT in a false light.  The false light  in which Mr. Ferguson were placed would be highly

19    offensive to a reasonable person.

20    100.    Both HONEA and STATHAM had knowledge of or acted in reckless disregard as

21    to the falsity of the publicized matter and the false light in which Mr. Ferguson would be placed.

22    101.    Said conduct was the legal and proximate cause of damages to CLAIMANT.

23    DEFENDANTS' conduct was willful, wanton, malicious, fraudulent and in conscious disregard for

24    the rights of CLAIMANT.  As a result, CLAIMANT suffered and continues to suffer mental and

25    emotional distress, humiliation, embarrassment, anxiety and pain.

26    Wherefore, CLAIMANT prays for judgment as more fully set forth below.

27

28    **NINTH CAUSE OF ACTION**

102.    Paragraphs 1 through 101 of this Complaint are hereby incorporated in and made a

1    part of this Ninth Cause of Action.

2        103.    The conduct of DEFENDANTS as set forth herein was extreme, outrageous and

3    unprivileged beyond the scope of conduct which should be tolerated in a Democratic and Civilized

4    Society, and was so extreme and outrageous as to exceed all possible bounds of decency, and to be

5    regarded as atrocious and utterly intolerable in a civilized community. DEFENDANTS committed

6    the aforementioned extreme and outrageous and unprivileged acts with the intent to cause and inflict

7    emotional distress upon CLAIMANT. DEFENDANTS' conduct was also committed with reckless

8    disregard of the probability of causing emotional distress to CLAIMANT.

9        104.    As direct and legal result of DEFENDANTS' willful, intentional, and malicious

10   conduct as set forth herein, CLAIMANT has suffered severe and extreme mental and emotional

11   distress.

12       Wherefore, CLAIMANT prays for judgment as more fully set forth below.

13                      **TENTH CAUSE OF ACTION**
                  **(Negligent Infliction of Emotional Distress)**

14       105.    Paragraphs 1 through 104 of this Complaint are hereby incorporated in and made a

15   part of this Tenth Cause of Action.

16       106.    The conduct of DEFENDANTS, and each of them, as set forth herein was negligent,

17   in that said conduct failed to exercise reasonable care to avoid harming the CLAIMANT.  That by

18   reason of the DEFENDANTS' negligence, CLAIMANT were caused to suffer extreme mental

19   distress, humiliation, embarrassment, extreme shock and nervousness.

20       107.    Said conduct was the legal and proximate cause of damages to CLAIMANT. As a

21   result, CLAIMANT suffered and continues to suffer mental and emotional distress, humiliation,

22   embarrassment, anxiety and pain.

23       Wherefore, CLAIMANT prays for judgment as more fully set forth below.

24                     **ELEVENTH CAUSE OF ACTION**
                   **(Violations of the Unruh Civil Rights Act)**

25                          **(Section 52.1 and 52.3)**

26       108.    Paragraphs 1 through 107 of this Complaint are hereby incorporated in and made a

     part of this Eleventh Cause of Action.

27       109.    DEFENDANTS are persons who, under color of law and in the scope of their

28

1  employment have subjected CLAIMANT to the deprivation of their civil rights as guaranteed by the

2  First, Fourth and Fourteenth Amendments of the United States Constitution.  Said rights include

3  CLAIMANT's right to free speech and substantive and procedural due process guaranteed by the

4  First, Fourth and Fourteenth Amendments.

5       110.    At all times herein mentioned DEFENDANTS RAMON HONEA, KIMBERLY

6  STATHAM, and JACQUELINE PHILLIPS acted or purported to act within the course and scope

7  of their employment and under color of law.

8       111.    DEFENDANT RAMON HONEA wrongfully alleged that CLAIMANT used non-

9  privileged force and hate language during the March 9, 2006 incident.  Further, without conducting

10  any independent investigation of the truth of the allegation, DEFENDANT HONEA pushed the site-

11  level and district administration to discipline Mr. Ferguson.  At a meeting about a similar incident

12  involving a different African American Student, DEFENDANT HONEA made a comment about

13  "big black men, hitting Latino kids."

14       112.    DEFENDANTS JACQUELINE PHILLIPS and KIMBERLY STATHAM took

15  disciplinary action against CLAIMANT without doing any independent investigation, despite ample

16  evidence that called into question the veracity of the complaining student's statement.  Neither

17  DEFENDANT took any action to discipline DEFENDANT HONEA, a Latino man, when he was

18  involved in a substantially similar incident with an African American youth.

19       113.    Said conduct was the legal and proximate cause of damages to CLAIMANT . As a

20  result, CLAIMANT suffered and continues to suffer mental and emotional distress, humiliation,

21  embarrassment, anxiety and pain.

22       Wherefore, CLAIMANT prays for judgment as more fully set forth below.

23                  **PRAYER FOR RELIEF**

24       **WHEREFORE,** CLAIMANT pray judgment be entered against all DEFENDANTS

25  and each of them jointly and severally:

26       1.    For economic and non-economic damages in an amount according to proof.

27       2.    For punitive damages against all DEFENDANTS except DEFENDANT OAKLAND

28  UNIFIED SCHOOL DISTRICT in an amount according to proof.

CLAIM FOR DAMAGES                                    20

3.  For an award costs,  expenses and reasonable attorney's fees pursuant to 42 U.S.C. §1988.

4.  To Grant such other and further relief as the Court may deem just and proper.

DATED: May 21, 2007

LAW OFFICER OF BONNER & BONNER

CHARLES A. BONNER

# EXHIBIT 2

ROY A. COMBS
*General Counsel*

JOHN W. ALLEN
*Assistant Legal Advisor*

MICHAEL L. SMITH
*Associate Counsel*

JANETTE PUCCETTI
KENNETH MONEY
JOHN P. PISANI
*Legal Assistants*



OAKLAND UNIFIED SCHOOL DISTRICT

OFFICE OF THE GENERAL COUNSEL
Paul Robeson Administration Building
1025 Second Avenue, Rm. 406
Oakland, CA  94606
(510) 879-8535
FAX (510) 879-1833

June 15, 2007

Law Offices of Bonner & Bonner
1913 Bridgeway
Sausalito, CA  94965

   Re: Notice of Return of Claim of James Ferguson Without Action

Dear Sir or Madam:

   This is to inform you that the above-referenced claim which you presented to the Oakland Unified School District on or about May 21, 2007, is being returned as to certain events alleged because it was not presented within six months after the events or occurrences as required by law. See §901 and 911.2 of the Government Code. Specifically, the claim is being returned as to events pertaining to all applicable state law causes of action which are alleged to have occurred more than six months prior to claim filing. Because the claim was not presented within the time allowed by law, no action was taken on the claim as to those events.

   The timely portion of the claim is still under review. A separate response will be sent regarding the timely portion of the claim in accordance with applicable Government Code provisions.

   Your only recourse at this time is to apply without delay to the Oakland Unified School District for leave to present a late claim as to those events alleged to have occurred more than six months ago. See §§911.4 to 912.2, inclusive, and §946.6 of the Government Code. I am enclosing a late claim application for your convenience. Under some circumstances, leave to present a late claim will be granted. See §911.6 of the Government Code.

   You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

      Very truly yours,

      *Jan Puccetti*

      Jan Puccetti
      Claims Manager

Enclosure: Claim
  District Late Claim Application
  Proof of Service

RECEIVED JUN 1 6 2007

C207012.002

ROY A. COMBS
*General Counsel*

JANETTE PUCCETTI
KENNETH MONEY
JOHN P. PISANI
*Legal Assistants*



OAKLAND UNIFIED SCHOOL DISTRICT

OFFICE OF THE GENERAL COUNSEL
Paul Robeson Administration Building
1025 Second Avenue, Rm. 406
Oakland, CA 94606
(510) 879-8535
FAX (510) 879-1833

June 15, 2007

Law Offices of Bonner & Bonner
1913 Bridgeway
Sausalito, CA 94965

     Re:    Rejection Notice – Claim of James Ferguson
           Our Matter No.:     C207012

Dear Sir or Madam:

     Notice is hereby given that the above-referenced claim which was presented to the Oakland Unified School District on or about May 21, 2007, was rejected on June 15, 2007 as to those events alleged to have occurred within six months prior to claim presentation.

WARNING

     Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a State court action on this claim. See Government Code section 945.6.

     You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

               Very truly yours,

               *Jan Puccetti*

               Jan Puccetti
               Claims Manager

Enclosure: Proof of Service

C207012.004

# EXHIBIT 3

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA    ☒ EEOC | 550-2006-01223 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Mr. James E. Ferguson** | **(510) 569-5922** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **P. O. Box 2296, San Leandro, CA 94577** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **OAKLAND UNIFIED SCHOOL DISTRICT** | **500 or More** | **(415) 836-8241** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1025 Second Avenue, Room 201, Oakland, CA 94606** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest     Latest
**06-22-2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent in 1992. My job title is Teacher. On or about March 15, 2006, I was indefinitely suspended and the suspension has continued to the present. Other non-Christian Blacks over the age of 40 have not been arbitrarily targeted for suspension or discipline.

The reason given to me for the suspension was that I assaulted a student.

I believe that I have been discriminated against on the basis of my race, Black and religion, Christian, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that a class of Christian Blacks over the age of 40 including Antonio Gulley, Joe Roberts, Michael Salem and Loretta Barnett have also been suspended or disciplined by Respondent. *Early Evans,*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *June 23, 2006*     Date     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*   JUL 0 3 2006   EEOC-SFDO |



**U.S. Equal Employment Opportunity Commission**
**San Francisco District Office**

350 The Embarcadero
Suite 500
San Francisco, CA 94105
(415) 625-5600
TTY (415) 625-5810
FAX (415) 625-5675
1-800-669-4000

June 22, 2006

James E. Ferguson
P.O. Box 2296
San Leandro, CA 94577

Re:    EEOC No.: 550-2006-01223N

Dear Mr. Ferguson:

This is with reference to your recent communication where you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to one or more of the following laws:

     [X]   Title VII of the Civil Rights Act of 1964 (Title VII)
     [X]   The Age Discrimination in Employment Act (ADEA)
     [ ]   The Americans with Disabilities Act (ADA)
     [ ]   The Equal Pay Act (EPA)

The attached **EEOC Form 5, Charge of Discrimination**, was drafted as a result of the information provided. To enable proper handling of this action by the Commission you should:
Review the enclosed charge form (four copies).

    (1)   After review, sign and date the charge in the bottom left hand block where I have made an "X". The date of signature on the charge will not affect the jurisdiction date established in any original written complaint previously given to EEOC.

    (2)   Return the signed charge (four copies, keep one copy for your records) to this office in the enclosed postage paid envelope.

Since charges should be processed within the time limits imposed by law, please complete these steps as soon as possible. Please call me at the number listed below if you have any questions.

[ X ]   Please be aware that the EEOC will notify the charge employer by a form letter that a charge has been filed. We will not serve the actual charge to the employer until we receive the enclosed charge signed by you. **If we do not receive your signed charge within 30 days, we will dismiss your charge, and issue you a notice of right to sue under the federal law.**

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

*Scott Doughtie*

Scott Doughtie
Intake Investigator
(415) 625-5663

Office Hours: Monday - Friday, 8:00 a.m. - 4:30 p.m.
TDD: 1-800-669-6820    www.eeoc.gov
Enclosure(s)   Copy of EEOC Form 5, Charge of Discrimination

May 4, 2006

Mr. Arthur Zeidman
Regional Civil Rights Director
U.S. Department of Education
Office for Civil Rights
50 United Nations Plaza, Room 239
San Francisco, California 94102

RECEIVED
U.S. Dept of Education

MAY 0 4 2006

Office for Civil Rights
San Francisco Office

Dear Mr. Zeidman,

I am writing this as a formal complaint requesting an investigation into the campaign of harassment, racial, sexual and religious discrimination that has targeted Christian, heterosexual African-American males working at Havenscourt Middle School (Oakland Unified School District).

Over the past year, Assistant Principal, Ramon Honea, has used his position to inflame tensions at the school. He has orchestrated events whereby two African-American physical education teachers were targeted and placed on administrative leave. These actions were based upon false charges reported to Mr. Honea by Latino students.

This pattern of abuse extends over the past 10 years whereby African-American male teachers at Havenscourt Middle School have been singled out and targeted by District administrators and placed on administrative leave or demoted without due process. The Oakland Unified School District has been lax in its oversight and investigation of these matters. The District engages in disparate treatment of African-American males at the school.

Many times, students' stories are believed, whereas teachers' versions of the facts are summarily disregarded. Mr. Honea's actions have sent signals to the students that misconduct will be tolerated. This only serves to empower those students to escalate their dangerous behaviors, whereby they think they can commit disruptive acts with impunity, then make false statements against teachers in an attempt to get teachers fired or placed on administrative leave.

Teacher Joe Roberts was battered by male Latino students who were throwing rocks which hit him in the head and caused injury. In an effort to defend himself against his attackers, Mr. Roberts tossed his keys in the direction of the perpetrators. His attackers falsely reported to Mr. Honea that they only threw erasers which did not cause injury to

1 – Civil Rights Complaint

Mr. Roberts and that would not justify Mr. Roberts tossing his keys at them. Mr. Honea pushed to relieve Mr. Roberts from his teaching assignment and placed on administrative leave based upon these false student allegations. In a hearing with Mr. Roberts' union representatives, Mr. Honea made the biased comment regarding, "A big black man hitting Latino kids." Subsequently, Mr. Roberts was taken off work on stress leave related to this incident and awarded a Worker's Compensation Claim against the District and he retired in June 2005.

In the case of teacher James Ferguson, on March 7, 2006, a student falsely reported to Mr. Honea that Mr. Ferguson called him a "faggot" and pushed him. A meeting between the teacher, student, parent of the student, and Principal Jacqueline Phillips was conducted at the school on March 10, 2006. At this meeting, the student admitted to throwing the teacher's sign-in clipboard across the gym crowded with students. At the conclusion of the meeting, the parent of the child expressed her concern about the child's behavior (he has been in trouble before at the school) and indicated that she did not wish to see any harm come to Mr. Ferguson, or his placement on administrative leave. The necessary parties reached an agreement that this matter was concluded and Mr. Ferguson returned to his teaching duties and the student returned to class.

After the resolution of this situation, a Havenscourt teacher, Kristina Ringland, a Caucasian female and a confidant of Mr. Honea, confronted the Principal demanding severe consequences for Mr. Ferguson. Ms. Ringland threatened to go over the Principal's head to her immediate supervisor if the consequences did not occur immediately. Despite the fact that there was no credible evidence to corroborate the student's allegation and no further investigation, on March 13, 2006, Mr. Ferguson was called out of his class and placed on administrative leave by OUSD. He is still on administrative leave status as of the filing of this complaint.

Yet, it has been reported that Mr. Honea was accused of pushing another African-American student at the school but has not been held to the same standard or administrative leave sanction as those aforementioned African-American teachers.

Furthermore, Assistant Principal Ramon Honea, along with teacher, Charlene Sevilla, conspired to cover-up discriminating against the Girl Scouts of America who were prevented from giving a presentation at the school by Ms. Sevilla. Ms. Sevilla allowed Assistant Principal Honea to give a presentation to her class on his homosexual lifestyle.

Students who complained were targeted and called homophobic. Neither Ms. Sevilla, nor Mr. Honea, who engaged in these acts were reprimanded

2 – Civil Rights Complaint

or sanctioned (investigated and placed on administrative leave) by the OUSD. They are both Latino.

Ms. Sevilla, who prevented the Girl Scouts of America from presenting in her class, but allowed Mr. Honea to present his homosexual lifestyle to her class, also spearheaded a complaint against the student performances in the African-American History assembly at Havenscourt.

Yet, during the Cesar Chavez assembly, a Latino speaker encouraged middle school students at Havenscourt to walkout of the school. Many of these students left the school endangering their well being. Ms. Sevilla never wrote a complaint against the speaker at the Cesar Chavez assembly.

Mr. Akeel, an African-American coordinator of the Safe Passages program at Havenscourt, has been bullied and harassed by Ms. Sevilla, Ms. Dawn Chartschlaa, and Ms. Anya Gurholt because he would not tailor the agenda of a violence prevention program event to specifically address the topic of homophobia as it related to homosexuality/bisexuality/transgender, as promoted by Assistant Principal Ramon Honea, Ms. Sevilla, Ms. Chartschlaa, and Ms. Gurholt. Through the coordinator's active involvement with the community and students, the topic of homosexuality was not the prevailing issue that was identified as being the major type of violence plaguing the Havenscourt community.

Under the guise of general Tolerance workshops, recent staff development presentations have focused only on the homosexual, bisexual, and transgender lifestyle. Staff members who may not agree with or are uncomfortable with the promotion of sexual lifestyles in schools have been forced to listen during staff development and faculty meetings.

Mr. Honea, Ms. Sevilla, Ms. Chartschlaa, and Ms. Gurholt have created a climate of heterosexual harassment (heterophobia) directed at anyone who objects or is unwilling to promote any type of homosexual lifestyle amongst Middle School students. Staff members and students at the school who are not homosexual/bisexual/transgender are being subjected to a hostile work/school environment by the incessant promotion of the hetero-phobic hysteria of radical pro-homosexual activists. Staff members are also intimidated by these radical staff members and workshop presenter's threats of legal reprisals, and legal interpretations advocating the promotion of homosexuality/bisexuality/transgender lifestyles.

3 – Civil Rights Complaint

We are requesting your immediate intervention, investigation, and the cessation of this pattern of discrimination, harassment, and abuse by Oakland Unified School District, Havenscourt Assistant Principal Ramon Honea, Ms. Charlene Sevilla, Ms. Kristina Ringland, Ms. Dawn Chartschlaa, Ms. Anya Gurholt, and District-sponsored workshop presenters.

Very truly yours,

James E. Ferguson
Teacher, Physical Education
Havenscourt Middle School

Antonio C. Gulley
Teacher, Physical Education
Havenscourt Middle School

Joseph Roberts
Retired Teacher, Phys. Ed.
Havenscourt Middle School

4 – Civil Rights Complaint



## UNITED STATES DEPARTMENT OF EDUCATION

OFFICE FOR CIVIL RIGHTS

RECEIVED
U.S. Dept of Education

MAY - 4 2006

Office for Civil Rights
San Francisco Office

Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

## DISCRIMINATION COMPLAINT FORM

(This form is not required to file a complaint with OCR. However, the information requested in Items 1 – 5 must be provided for all complaints, whether or not the form is used.)

1.   Name of person filing this complaint:

NAME (Mr./Ms.) FERGUSON          JAMES              ERIC
                    (Last)          (First)          (Middle)
ADDRESS    P.O. Box 2296

CITY & STATE  San Leandro, CA 94577
                                                        (ZIP)
HOME PHONE No.  (510) 569-5922
                (Area Code)
WORK PHONE No. (510) 301-4584
                (Area Code)

EMAIL ADDRESS

2.   Name of person discriminated against (if other than person filing):

NAME (Mr./Ms.)
                    (Last)          (First)          (Middle)

ADDRESS:

CITY & STATE
                                                        (ZIP)

HOME PHONE No.
                (Area Code)
WORK PHONE No.
                (Area Code)



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

## DISCRIMINATION COMPLAINT FORM

(This form is not required to file a complaint with OCR. However, the information requested in Items 1 – 5 must be provided for all complaints, whether or not the form is used.)

1.    Name of person filing this complaint:

NAME (Mr./Ms.)___ROBERTS_____JOE_____COHEN_____
                              (Last)                 (First)                   (Middle)
ADDRESS _10975 Elvessa Street_____

CITY & STATE _Oakland, CA_____94605_____
                                                                              (ZIP)
HOME PHONE No. _(510) 635-0129_____
                              (Area Code)
WORK PHONE No._(510) 336-1145_____
                              (Area Code)

EMAIL ADDRESS _____

2.    Name of person discriminated against (if other than person filing):

NAME (Mr./Ms.)_____
                              (Last)                 (First)                   (Middle)

ADDRESS:_____

CITY & STATE_____
                                                                              (ZIP)

HOME PHONE No._____
                              (Area Code)
WORK PHONE No._____
                              (Area Code)

Page 2 – Complaint Fo

3.    OCR investigates discrimination complaints against institutions and agencies, which receive funds from U.S. Department of Education.  Please identify the institution or agency that discriminated against you.

NAME (Mr./Ms.)  Oakland Unified School District _____

ADDRESS_____1025 Second Avenue_____

CITY & STATE/ZIP_____Oakland, CA 94606_____

DEPT. OF SCHOOL__Havenscourt Middle School_____

4.    The laws OCR enforces prohibit discrimination because of race, color, national origin, sex, disability, or age.  Please indicate whether the complaint concerns student services or employment (or both) and complete the appropriate category(ies) under basis:

BASIS (Check one or more and specify for each item checked.)
Grounds on which you feel you were discriminated against:

_____ Student Services   _____ Race/Color    _____

_____ National Origin _____

_____ Sex          _____

_____ Disability .   _____

_____ Age         _____

__X__ Employment    __X__ Race/Color    _Race_____

_____ National Origin _____

__X__ Sex          _____

_____ Disability     _____

5.    What is the most recent date you were discriminated against?

March 2006_____

Page 3 – Complaint Fo

6.   If more than 180 days have passed since this date, please explain why you
     waited until now to file your complaint.

     **N/A**
     _____


7.   When did the alleged discrimination begin?  **Within the past 6 months, discriminatory**
                                                   **practices patterned over the years.**

8.   When and in what way did you first become aware that the treatment, act, or
     decision was discriminatory?

     **Recently and over time.**
     _____

     _____

     _____

     _____


9.   Have you tried to resolve your complaint with the institution through an internal
     grievance procedure?

     YES ____            NO **X**__

     If you answered yes, please give OCR the name of the grievance procedure, the
     date you filed, and tell OCR the status of your complaint at this time.

     _____

     _____

     _____


10.  The laws OCR enforces prohibit institutions receiving Department of Education
     funds from retaliating, harassing, or intimidating persons for taking action or
     participating in an action to secure rights protected by Title VI, Title IX, Section
     504, Title II, or the Age Discrimination Act.  If you feel that you have been
     harassed, intimidated, or retaliated against, please explain how and when this
     took place in your statement.  Be sure to explain what action you took on your
     own behalf, or for someone else, to protect yourself or others from discrimination
     on the bases of race, color, national origin, sex, disability, or age, and describe
     how and when the institution learned of your action.
     **Mr. Ferguson has been involuntarily transferred for punitive reasons for**
     **filing past complaints and grievances against OUSD; four times since**
     **the 2000 -2001 school year.**
     _____

Page 4 — Complaint For.

11.    In your own words, describe what happened, when it happened, and who was responsible. (Attach additional pages If necessary)

Substance of this complaint is written in the coverletter/narrative accompanying this

complaint.

Page 5 – Complaint Fc

12.   If you have filed this complaint with any other Federal, State or local civil rights agency, or any Federal or State court, please give details and dates.  OCR will determine whether it is appropriate to investigate your complaint based upon the specific allegations of your complaint and the actions taken by the other agency or court.

AGENCY OR COURT:  __None_____

_____

_____

DATE FILED: _____

RESULT OF INVESTIGATION/FINDINGS BY AGENCY: _____

_____

_____

_____

_____

_____

13.   If you have not filed with another agency, do you intend to do so?

YES ___          NO _X__

NAME OF AGENCY: _____

ADDRESS: _____

CITY & STATE: _____
                                                    (Zip Code)

14.   Have you (or the person you are filing this complaint for) ever filed a complaint with OCR before?

YES _X_          NO___

Page 6 – Complaint Fu

15.    While it is not necessary for you to know about money that the institution you are
       filing against receives from the Federal government, if you know of any
       Education Department funds received by the program or department in which the
       alleged discrimination occurred, please provide this information below.

       Unknown at this time.

       _____

       _____

16.    OCR cannot accept your complaint if it has not been signed.  Please sign and
       date your complaint below.

       May 4, 2006                          _____
       (Date)                               (Signature)

17.    If OCR cannot reach you at your home or work, OCR would like to have the
       name and telephone number of another person (relative or friend) who knows
       where and when OCR can reach you.  This information is not required, but it will
       be helpful to OCR.

       NAME _____

       TELEPHONE NUMBERS: (HOME) _____ (WORK) _____
                                  (Area Code)              (Area Code)

18.    OCR has a procedure available which is quicker than an investigation.  This is an
       OCR mediation process.  In this process, OCR attempts to help the complainant
       and the institution reach an agreement to settle the complaint.  OCR does not
       use mediation if class issues are involved (e.g. more than one individual is
       alleged to have been harmed).  In addition, both the complainant and the
       institution must want to take part in the mediation.  Mediation is generally limited
       to approximately 25 days, and the complainant, the institution, or OCR may end
       the mediation process if it appears that an agreement cannot be reached. If this
       happens, OCR will investigate the complaint.  One of the primary benefits of this
       process is that it may be possible to resolve your complaint quickly, without the
       need for an investigation.

       If OCR feels that mediation of your complaint is appropriate, are you interested
       in having OCR mediate your complaint?

       YES ____          NO  x

Page 6 – Complaint Form

15.   While it is not necessary for you to know about money that the institution you are
      filing against receives from the Federal government, if you know of any
      Education Department funds received by the program or department in which the
      alleged discrimination occurred, please provide this information below.

      <u>Unknown at this time.</u> _____

      _____

      _____

16.   OCR cannot accept your complaint if it has not been signed.  Please sign and
      date your complaint below.

      5/4/06 _____          *Joe C. Roberts*
      **(Date)**                              **(Signature)**

17.   If OCR cannot reach you at your home or work, OCR would like to have the
      name and telephone number of another person (relative or friend) who knows
      where and when OCR can reach you.  This information is not <u>required</u>, but it will
      be helpful to OCR.

NAME _____

TELEPHONE NUMBERS: (HOME) _____ (WORK) _____
                                      (Area Code)                              (Area Code)

18.   OCR has a procedure available which is quicker than an investigation.  This is an
      OCR mediation process.  In this process, OCR attempts to help the complainant
      and the institution reach an agreement to settle the complaint.  OCR does not
      use mediation if class issues are involved (e.g. more than one individual is
      alleged to have been harmed).  In addition, both the complainant and the
      institution must want to take part in the mediation.  Mediation is generally limited
      to approximately 25 days, and the complainant, the institution, or OCR may end
      the mediation process if it appears that an agreement cannot be reached. If this
      happens, OCR will investigate the complaint.  One of the primary benefits of this
      process is that it may be possible to resolve your complaint quickly, without the
      need for an investigation.

      If OCR feels that mediation of your complaint is appropriate, are you interested
      in having OCR mediate your complaint?

      YES _____          NO _X_

Page 6 – Complaint Form

15.    While it is not necessary for you to know about money that the institution you are
       filing against receives from the Federal government, if you know of any
       Education Department funds received by the program or department in which the
       alleged discrimination occurred, please provide this information below.

       _Unknown at this time._ _____

       _____

       _____

16.    OCR cannot accept your complaint if it has not been signed.  Please sign and
       date your complaint below.

       _5-4-06_____                    _Antonio Bulley_____
             (Date)                              (Signature)

17.    If OCR cannot reach you at your home or work, OCR would like to have the
       name and telephone number of another person (relative or friend) who knows
       where and when OCR can reach you.  This information is not _required_, but it will
       be helpful to OCR.

NAME _____

TELEPHONE NUMBERS: (HOME) _____ (WORK) _____
                              (Area Code)                    (Area Code)

18.    OCR has a procedure available which is quicker than an investigation.  This is an
       OCR mediation process.  In this process, OCR attempts to help the complainant
       and the institution reach an agreement to settle the complaint.  OCR does not
       use mediation if class issues are involved (e.g. more than one individual is
       alleged to have been harmed).  In addition, both the complainant and the
       institution must want to take part in the mediation.  Mediation is generally limited
       to approximately 25 days, and the complainant, the institution, or OCR may end
       the mediation process if it appears that an agreement cannot be reached. If this
       happens, OCR will investigate the complaint.  One of the primary benefits of this
       process is that it may be possible to resolve your complaint quickly, without the
       need for an investigation.

       If OCR feels that mediation of your complaint is appropriate, are you interested
       in having OCR mediate your complaint?

       YES ____          NO _X__

Page 7 – Complaint Fc.

19. If you would like to file this complaint electronically, the San Francisco OCR e-mail address is:

<u>OCR_SanFrancisco@ed.gov</u>

An online OCR complaint form may be found at the following website address:

http://www.ed.gov/offices/OCR/complaintintro.html



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

**REGION IX**
Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

## CONSENT FORM FOR USES OF PERSONAL INFORMATION FOR COMPLAINT

I have read the Notice about investigatory Uses of Personal Information by the U.S. Department of Education (hereinafter Department) Office for Civil Rights (OCR).

I am aware that it is the policy of OCR to protect the identity of complainants who cooperate with OCR investigation. However, I acknowledge the release of my identity to the institution that my complaint is against may be essential to the investigation and enforcement activities conducted by OCR. I give my consent in those limited circumstances when release is required for the processing of the complaint.

In addition, I acknowledge that under the Freedom of Information Act (FOIA), OCR may be required to disclose information gathered from me pursuant to this investigation. Although no guarantee of confidentiality has been given to me in exchange for this information, I have not waived any right to privacy under FOIA that OCR may assert on my behalf.

I understand that the information I provide, as well as other information developed by the investigation, will be used to resolve my complaint against the institution. I understand that this information will be available to any person within the Department with a need to know its contents, and may be used for program analysis, review, evaluation, and statistical purposes. However, should there be a need to disclose information from the complaint file for reasons other than those already stated, or pursuant to the Privacy Act, 5 U.S.C. § 552a(b), or the Freedom of Information Act, 5 U.S.C. § 552, my prior consent will be solicited.

_May 4, 2006_
(Date)

_(signature)_
(Name)

_09-06-1297_
(Docket Number)



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS

REGION IX
Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

## CONSENT FORM FOR USES OF PERSONAL INFORMATION FOR COMPLAINT

I have read the Notice about investigatory Uses of Personal Information by the U.S. Department of Education (hereinafter Department) Office for Civil Rights (OCR).

I am aware that it is the policy of OCR to protect the identity of complainants who cooperate with OCR investigation. However, I acknowledge the release of my identity to the institution that my complaint is against may be essential to the investigation and enforcement activities conducted by OCR. I give my consent in those limited circumstances when release is required for the processing of the complaint.

In addition, I acknowledge that under the Freedom of Information Act (FOIA), OCR may be required to disclose information gathered from me pursuant to this investigation. Although no guarantee of confidentiality has been given to me in exchange for this information, I have not waived any right to privacy under FOIA that OCR may assert on my behalf.

I understand that the information I provide, as well as other information developed by the investigation, will be used to resolve my complaint against the institution. I understand that this information will be available to any person within the Department with a need to know its contents, and may be used for program analysis, review, evaluation, and statistical purposes. However, should there be a need to disclose information from the complaint file for reasons other than those already stated, or pursuant to the Privacy Act, 5 U.S.C. § 552a(b), or the Freedom of Information Act, 5 U.S.C. § 552, my prior consent will be solicited.

_5-4-06_
(Date)

_Antonio Phillips_
(Name)

_____
(Docket Number)



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

REGION IX
Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

## CONSENT FORM FOR USES OF PERSONAL INFORMATION FOR COMPLAINT

I have read the Notice about investigatory Uses of Personal Information by the U.S. Department of Education (hereinafter Department) Office for Civil Rights (OCR).

I am aware that it is the policy of OCR to protect the identity of complainants who cooperate with OCR investigation. However, I acknowledge the release of my identity to the institution that my complaint is against may be essential to the investigation and enforcement activities conducted by OCR. I give my consent in those limited circumstances when release is required for the processing of the complaint.

In addition, I acknowledge that under the Freedom of Information Act (FOIA), OCR may be required to disclose information gathered from me pursuant to this investigation. Although no guarantee of confidentiality has been given to me in exchange for this information, I have not waived any right to privacy under FOIA that OCR may assert on my behalf.

I understand that the information I provide, as well as other information developed by the investigation, will be used to resolve my complaint against the institution. I understand that this information will be available to any person within the Department with a need to know its contents, and may be used for program analysis, review, evaluation, and statistical purposes. However, should there be a need to disclose information from the complaint file for reasons other than those already stated, or pursuant to the Privacy Act, 5 U.S.C. § 552a(b), or the Freedom of Information Act, 5 U.S.C. § 552, my prior consent will be solicited.

5/4/06
(Date)

*Joe C. Roberts*
(Name)

(Docket Number)



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE FOR CIVIL RIGHTS

REGION IX
Old Federal Building
50 United Nations Plaza, Room 239
San Francisco, California 94102

**MAY 3 0 2006**

Joyce Hendy, Director
Equal Employment Opportunity Commission
Oakland District Office
1301 Clay Street, Suite 1170-N
Oakland, California 94612-5217

RECEIVED

JUN 0 1 2006

EEOC-OLO

Recipient:       Oakland Unified School District
Complainant:     Mr. James Ferguson
OCR case no:     09-06-1297
Date Received:   May 4, 2006

Dear Director Hendy:

In accordance with the Procedures for Complaints of Employment Discrimination Filed Against Recipients of Federal Financial Assistance, 29 C.F.R. Part 1691, the U.S. Department of Education, Office for Civil Rights (OCR), is transferring/referring the above-referenced complaint to your office. The complaint alleges discrimination in employment against an individual on the basis of race, sex, religion, and sexual orientation.

We do not have jurisdiction over this complaint because of OCR's limited jurisdiction over employment matters under Title VI of the Civil Rights Act of 1964. However, the Equal Employment Opportunity Commission (EEOC) may have jurisdiction under Title VII of the Civil Rights Act of 1964. OCR has jurisdiction over the sex discrimination allegation under Title IX of the Education Amendments of 1972 and its implementing regulation because the District receives Department funds. However, under 29 C.F.R. Part 1691, complaints raising individual employment discrimination issues are to be referred to the EEOC unless there are special circumstances. There is no special circumstance in this case that would cause OCR to ask the EEOC to defer its investigation of the complaint. Accordingly, we are transferring this complaint to your office for appropriate action. A copy of the complaint is enclosed.

We are notifying the complainant and the recipient that OCR is transferring/referring the complaint to the EEOC for processing. We are informing these parties that the date OCR received the complaint will also be deemed the receipt date by the EEOC unless

*Our mission is to ensure equal access to education and to promote educational excellence throughout the Nation.*

Page 2 — (09-06-1297)

EEOC received a similar complaint earlier. Copies of the letters to the complainant and recipient are enclosed.

Under the Freedom of Information Act, it may be necessary to release this document and related records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personal information that, if released, could reasonably be expected to constitute an unwarranted invasion of privacy.

This concludes OCR's consideration of this complaint. Please note that OCR has not determined whether the complaint states an actionable and timely claim of employment discrimination.

If you have any questions about this referral, please contact me at (415) 556-4275.

Sincerely,

Charles R. Love
Program Manager

Enclosures

# EXHIBIT 4



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5056 6524

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

February 21, 2007

Mr. James E. Ferguson
P.O. Box 2296
San Leandro, CA  94577

Re:  EEOC Charge Against Oakland Unified School District
     No. 550200601223

Dear Mr. Ferguson:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                    Sincerely,

                    Wan J. Kim
              Assistant Attorney General
                Civil Rights Division

          by   *Karen L. Ferguson*
                Karen L. Ferguson
            Supervisory Civil Rights Analyst
            Employment Litigation Section

cc:  San Francisco District Office, EEOC
     Oakland Unified School District

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 550-2006-01223 | Dianna Horne, Investigator | (415) 625-5664 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☐ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

FEB 21 **2007**

Enclosure(s)

~~H.~~ **H. Joan Ehrlich,**
**District Director**

(Date Mailed)

cc: **OAKLAND UNIFIED SCHOOL DIST.**
1025 Second Avenue, Room 201
Oakland, CA 94606

Enclosure with EEOC
Form 161-B (3/98)

## INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

### Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),

PRIVATE SUIT RIGHTS --

### or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

### PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before 7/1/02 -- not 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA backpay recovery period.

### ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

### ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. Equal Employment Opportunity Commission**
**San Francisco District Office**

350 The Embarcadero
Suite 500
San Francisco, CA 94105
(415)625-5600
TTY (415) 625-5610
FAX (415) 625-5609
1-800-669-4000

Respondent:          OAKLAND UNIFIED SCHOOL DISTRICT
EEOC Charge No.:   550-2006-01223

July 11, 2006

Mr. James E. Ferguson
P.O. Box 2296
San Leandro, CA 94577

EEOC Number: 550-2006-01223

Mr. Ferguson:

Now that you have filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC), it is important for you to understand some of our case processing procedures.

A Copy of your charge will automatically be filed with the State of California, Department of Fair Employment and Housing. This is being done to protect your right to file a suit in state court, should you desire to do so at a later date. It is not necessary for you to contact the state agency. Because of the formal agreement between the EEOC and the state agency, the EEOC will be processing your charge. The state agency will not process it unless we request them to do so. This rarely happens, but, it does, we will certainly let you know that we are transferring your charge to the state agency for processing.

In the interest of saving both your time and the time of the state agency, please do not contact that office either to file your charge or to inquire regarding it.

A copy of your charge will be served upon the Respondent within the time limitation set forth under both  federal and state laws.  In this instance, your charge will be served within ten (10)  days following receipt of it by this office.

Finally, we suggest that you keep this notice and a copy of your charge for your records. Be sure to advise us of any change in your address or telephone number. Failure to do so could result in dismissal of your charge. Please use your charge number on all correspondence.

If you need further assistance, please contact Terry Knapp at (415) 625-5667.

Sincerely,

*Michelle L. Nardella*
Enforcement Manager

TTY # (800) 700-2320

☐ H
1001 Tower Way, Suite 250
Bakersfield, CA 93309
(661) 395-2729

☐ C
1320 E. Shaw Avenue, Suite 150
Fresno, CA 93710
(559) 244-4760

☐ S/T
611 West Sixth Street, Suite 1500
Los Angeles, CA 90017
(213) 439-6799

☒ M
1515 Clay Street, Suite 701
Oakland, CA 94612
(510) 622-2941

☐ E
2000 "O" Street, Suite 120
Sacramento, CA 95814
(916) 445-5523

☐ D
1350 Front Street, Suite 3005
San Diego, CA 92101
(619) 645-2681

☐ A
San Francisco District Office
1515 Clay Street, Suite 701
Oakland, CA 94612
(510) 622-2973

☐ G
111 North Market Street, Suite 810
San Jose, CA 95113
(408) 277-1277

☐ K
2101 East Fourth Street, Suite 255-B
Santa Ana, CA 92705
(714) 558-4266

Date:     July 11, 2006

Case Name:     JAMES E. FERGUSON vs.
OAKLAND UNIFIED SCHOOL DISTRICT

EEOC No:     550-2006-01223

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being referred to the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

**No response to the DFEH is required by the respondent.**

The EEOC will be responsible for the processing of this complaint. DFEH will not be conducting an investigation into this matter. EEOC should be contacted directly for any discussion of the charge. DFEH is closing its case on the basis of "processing waived to another agency."

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

Since DFEH will not be issuing an accusation, this letter is also your right-to-sue notice. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior or Justice Court. Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed. Questions about the right to file under federal law should be referred to the EEOC.

The DFEH does not retain case records beyond three years after a complaint is filed.

**Remember: This Right-To-Sue Notice allows you to file a private lawsuit in State court.**

Sincerely,

WANDA J. KIRBY
Chief Deputy Director

DFEH-200-02 (07/05)

# EXHIBIT 5



# *Oakland Unified School District*

## HUMAN RESOURCES SERVICES AND SUPPORT

**1025 Second Avenue, Room 200, Oakland, CA  94606-2296**

**Phone: (510) 879-8592    -    Fax: (510) 879-4614**

March 13, 2006

**CERTIFIED MAIL**
**7002 2030 0005 3485 2931**

James Ferguson
P.O.BOX 2296
San Leandro, CA 94577

Re:    **Administrative Leave with Pay – Havenscourt Middle School**

Dear Mr. Ferguson:

This letter serves to confirm the District's decision to place you on Administrative Leave with Pay effective Monday, March 13, 2006.  The purpose of this leave is to provide the District time to conduct an investigation into allegations of misconduct at Havenscourt Middle School. This action is not and should not be construed as punitive measure or a presumption of the truth of the allegation.

This Administrative Leave will remain in effect pending the completion of the District's investigation.  You are to be available to the District by telephone during your regular work hours in the event it becomes necessary to contact you.  You are not to report to Havenscourt Middle School or any other District site except to Payroll or Human Resources until further notice.   Your paycheck or direct deposit statement will be mailed to your address of record unless you notify Payroll in writing to hold your paycheck for pickup (you must personally pick up your own paycheck with proper ID); or direct Payroll in writing to mail it to another address.

Thank you for your cooperation in this matter.

Sincerely,

Dasha LaBrie
Site Team Generalist

cc:    Jacqueline Phillips, Principal, Havenscourt
       Suanna Gilman-Ponce, Executive Officer, Middle School Network
       Allison Layton, Site Team Manager, HRSS
       Hal Stephens, Executive Director, OEA
       Ward Roundtree, III, Executive Director, OEA

# EXHIBIT 6



Change Text Size: A  A  A

Search [                    ] GO

Advanced | Site Map | A-Z Index

| Curriculum & Instruction | Testing & Accountability | Professional Development |
| Finance & Grants | Data & Statistics | Learning Support | Specialized Programs |

Home ≫ Executive Office ≫ Mission & Vision ≫ Role & Responsibilities     **Printer-friendly version**

# Role & Responsibilities

Brief description of the California Department of Education.

The California Department of Education (CDE) oversees the state's diverse and dynamic public school system that is responsible for the education of more than seven million children and young adults in more than 9,000 schools. The CDE and the State Superintendent of Public Instruction are responsible for enforcing education law and regulations; and for continuing to reform and improve public elementary school programs, secondary school programs, adult education, some preschool programs, and child care programs. The CDE's mission is to provide leadership, assistance, oversight, and resources so that every Californian has access to an education that meets world-class standards. The CDE is committed to working in partnership with local schools to improve student achievement.

The CDE's goals include:

- Holding local educational agencies accountable for student achievement in all programs and for all groups of students
- Building local capacity to enable all students to achieve state standards
- Expanding and improving a system of recruiting, developing, and supporting teachers that instills excellence in every classroom, preschool through adult
- Providing statewide leadership that promotes effective use of technology to improve teaching and learning
- Increasing efficiency and effectiveness in administration of kindergarten through grade twelve education, including student record keeping, and good financial management practices
- Providing broader and more effective communication among the home, school, district, county, and state
- Establishing and fostering systems of school, home, and community resources that provide the physical, emotional, and intellectual support that each student needs to succeed
- Advocating for additional resources and flexibility, and providing statewide leadership that promotes good business practices, so that California schools can target their resources to assure success for all students
- Improving the effectiveness and efficiency of the Department

**Questions: Executive Office | 916-319-0800**

**Download Free Readers**

California Department of Education
1430 N Street
Sacramento, CA 95814

Contact Us | FAQ | Web Policy

Last Reviewed: Tuesday, December 26, 2006

# EXHIBIT 7

# OEA/OUSD

AGREEMENT BETWEEN

 OAKLAND UNIFIED SCHOOL DISTRICT AND OAKLAND EDUCATION
ASSOCIATION


 Representing Teachers and other Certificated Classifications


For the Period
July 1, 1999 - June 30, 2002



**Compliments of the**
Oakland Unified School District (OUSD)
Oakland Education Association (OEA)
California Teachers Association (CTA)
National Education Association (NEA)

272 E. 12th Street
Oakland, CA 94606
510-763-4020
Fax 510-763-6354

# TABLE OF CONTENTS

**ARTICLE 1.0 – AGREEMENT**     **1**
GENERAL BARGAINING PROVISIONS     1

**ARTICLE 2.0 – RECOGNITION**     **2**

**ARTICLE 3.0 – DEFINITIONS**     **3**

**ARTICLE 4.0 – NON-DISCRIMINATION**     **4**

**ARTICLE 5.0 – EMPLOYER RIGHTS**     **5**

**ARTICLE 6.0 – ASSOCIATION RIGHTS**     **6**

**ARTICLE 7.0 – EMPLOYEE RIGHTS**     **8**
FACULTY COUNCIL     8
FACULTY COUNCIL FUNCTION     9
FACULTY COUNCIL ELECTION     10

**ARTICLE 8.0 – AFFIRMATIVE ACTION**     **13**
AFFIRMATION ACTION COMMITTEE     13

**ARTICLE 9.0 – ACADEMIC FREEDOM**     **14**

**ARTICLE 10.0 – HOURS OF WORK**     **15**
WORK YEAR     15
GRADE LEVEL     15
STAFF DEVELOPMENT "BUY BACK DAYS"     16
WORKDAY     19
SUBSTITUTE REQUEST     21
FACULTY MEETINGS     22
PREPARATION PERIODS FOR ELEMENTARY TEACHERS     22
GENERAL PROVISIONS     23
TEACHER COMMITMENT PROGRAM     24

**ARTICLE 11.0- LEAVES**     **26**
GENERAL PROVISIONS     26
LEAVE OF ABSENCE WITHOUT PAY     26
MATERNITY, PATERNITY AND ADOPTION LEAVE     27
PROFESSIONAL GROWTH LEAVE     27
LEAVE FOR TRAVEL     27
LEAVE FOR TEACHING IN ANOTHER COUNTRY     27
LEAVE FOR PUBLIC OFFICE     28
ASSOCIATION LEAVE     28
LEGISLATION LEAVE     29
GENERAL LEAVE     29
FAMILY AND MEDICAL ACT LEAVE     30

# OEA/OUSD

## AGREEMENT BETWEEN
## OAKLAND UNIFIED SCHOOL DISTRICT AND
## OAKLAND EDUCATION ASSOCIATION

Representing Teachers and Other Certificated Classifications

For the Period
July 1, 2005 through June 30, 2008

Oakland Unified School District (OUSD)
1025 Second Avenue
Oakland, CA  94606

Oakland Education Association (OEA)
272 E. 12th Street
Oakland, CA  94606
(510) 763-4020
Fax (510) 763-6354

IN WITNESS WHEREOF, the parties have executed this Agreement on the 29th day of January 2007.

FOR THE OEA:

_Ben Visnick_

Ben Visnick, President

_David de Leeuw_

David De Leeuw, Chair

_William Balderston_

William Balderston, Executive Board

_Relena D. Ellis_

Relena Ellis, Executive Board

_Ward V. Rountree, III_

Ward Rountree, Executive Director

FOR THE DISTRICT:

_Kimberly Statham_

Kimberly A. Statham, State Administrator

_Roy A. Combs_

Roy A. Combs, General Counsel

_Troy Christmas_

Troy Christmas, Director of Labor Management Employee Relations

## Bargaining Teams

**Oakland Education Association**

Ben Visnick, President
David De Leeuw, Chair
Bill Balderston
Relena Ellis
Krista Hayman
Doug Provencio
Julie Palacios
Emelder Roe

**Oakland Unified School District**

Roy A. Combs, Chair
Troy Christmas
Alan Levinson
Javetta Robinson
Denise Saddler
Kimberly Statham
Sue Woehrle

# TABLE OF CONTENTS

**ARTICLE 1 - AGREEMENT** ......................................................................... 1

   1.1      General Provisions.............................................................................1
   1.2      General Bargaining Provisions.........................................................1
   1.3      Term of Agreement ..........................................................................1

**ARTICLE 2 - RECOGNITION** ...................................................................... 2

   2.1      Oakland Education Association ........................................................2

**ARTICLE 3 - DEFINITIONS** ......................................................................... 3

   3.1      General ..............................................................................................3

**ARTICLE 4 - NON-DISCRIMINATION** ...................................................... 4

   4.1      General ..............................................................................................4

**ARTICLE 5 - EMPLOYER RIGHTS** ............................................................ 5

   5.1      General ..............................................................................................5

**ARTICLE 6 - ASSOCIATION RIGHTS** ...................................................... 6

**ARTICLE 7 - EMPLOYEE RIGHTS** ............................................................ 8

   7.1      General ..............................................................................................8
   7.2      Faculty Council ................................................................................8

**ARTICLE 8 - AFFIRMATIVE ACTION** ..................................................... 12

   8.1      General ............................................................................................12
   8.2      Affirmative Action Committee........................................................12

**ARTICLE 9 - ACADEMIC FREEDOM** ...................................................... 13

   9.1      General ............................................................................................13
   9.2      Lesson Plans ...................................................................................13

**ARTICLE 10 - HOURS OF WORK** ............................................................ 14

   10.1     Work Year ......................................................................................14
   10.2     Workday .........................................................................................15
   10.3     Covering Classes for Other Unit Members .....................................17
   10.4     Faculty Meetings.............................................................................18
   10.5     Preparation Periods for Elementary Teachers .................................18
   10.6     General Provisions..........................................................................20
   10.7     Teacher Commitment Program ........................................................21
   10.8     Extended Day Kindergarten ............................................................21

**ARTICLE 11 - LEAVES** ............................................................................. 22

   11.1     General Provisions..........................................................................22
   11.2     Leave of Absence Without Pay .......................................................22
   11.3     Leave of Absence With Pay ............................................................25
   11.4     Family Sick Leave...........................................................................26
   11.5     Extended Sick Leave .......................................................................26